## GREAT FALLS BANK *v.* FARMINGTON.

By the act of July 14, 1855, every city and town in the State was required to establish one or more agencies for the purchase and sale of spirituous and intoxicating liquors, for medicinal, mechanical and chemical purposes only, and wine for the commemoration of the Lord's Supper. Under its provisions the selectmen of any town, or the liquor agent or

Great Falls Bank *v.* Farmington.

agents by them appointed, might purchase, upon its credit, the liquors necessary to supply its agency or agencies, and the selectmen might rightfully bind the town by a note given for the price of such liquors.

The note of a town, properly given by its selectmen, in the hands of an innocent indorsee and purchaser thereof for value before its maturity, without notice or knowledge of any illegality in its consideration, is not open to the defence that it was given for the price of liquors sold in violation of the law of this or any other State.

Under the rule of court providing that the signatures and indorsements of all instruments declared on shall be considered as admitted at the first term, unless notice be given upon the docket that they are disputed within the first four days of that term, and an affidavit filed that such denial is not for the mere purpose of delay, if the execution or indorsement of an instrument declared upon is not denied, both the genuineness and authority of its execution and indorsement are to be taken as fully and conclusively admitted for all purposes, and no evidence to controvert either can be received, until the defendant is relieved from the operation of the rule.

Under the existing law, a deposition may properly be used for any of the causes specified in the statute, although taken to be used for a different cause, which no longer exists.

ASSUMPSIT, on a promissory note of the defendants, for $232.50, dated June 16, 1856, signed by R. E. Colbath and C. M. Demeritt, two of the selectmen, by order and in behalf of the town, originally payable to H. Rollins & Co., or order, in six months from date, and by them indorsed to the plaintiffs. The writ contained a second count for $400 money had and received. Plea, the general issue.

The plaintiffs put in evidence the note declared. upon, with the indorsement thereon, and there rested the case.

The defence was, that the note in suit was given for liquors purchased and sold in Boston, in violation of the laws of Massachusetts, or New-Hampshire, or of both. Upon the trial the court permitted the defendants, against the objection of the plaintiffs, to show, by the town-clerk of Farmington, that there was no vote recorded in the records of that town authorizing the selectmen for 1856, of whom Colbath and Demeritt were the majority, to sign notes in behalf of the town.

The defendants were also permitted, against the plaintiffs' objection, to read in evidence the deposition of Hiram Rollins, the cause of taking which was certified in the caption to be the residence of the deponent more than ten miles from the place of trial, although it was agreed that the deponent now lived within one mile of the place of trial, but was sick, and unable to attend court.

It was proved, before the jury, that on the first day of April, 1856, the selectmen of Farmington duly appointed an agent for the purchase and sale of liquors, agreeably to the provisions of the act of July 14, 1855, entitled "An Act for the suppression of Intemperance;" who gave bond as required by the act, and, at the expiration of his term of office, settled up with the selectmen, passed over to them the liquors remaining on hand, paid by his note, which is still unpaid, the balance due for liquors sold, and took up his bond; that upon his appointment the selectmen verbally authorized and instructed this agent to purchase liquors on the credit of the town, and from time to time, after he had done so, gave the notes of the town therefor, without any vote of the town authorizing them so to do; that in several instances the agent purchased liquors on the credit of the town, of H. Rollins & Co., for which the selectmen afterward gave the notes of the town, as before stated, which were subsequently paid by the agent from the proceeds of the sales at the agency; that the note in suit was thus given for liquors purchased of said Rollins & Co., by the agent, in Boston, on the credit of the town, and was given by the selectmen, upon an examination by the agent of the correctness of the account for which it was given; that Rollins & Co. were engaged in selling liquors in Boston, Massachusetts, where the liquors for which the note was given were sold, but were not licensed to sell liquors under the laws of Massachusetts; that the note in suit was transferred, in good faith and for a full consideration, by Rollins & Co., to

Thomas Shapleigh, who had no notice for what it was given, within two months or so after it was given ; that in the last week in August, 1856, the plaintiffs purchased the note of Shapleigh, in the regular course of business, discounting to him upon said note the amount thereof, without any notice or knowledge of the consideration for which it had been given ; that, when the note became due, demand of payment thereof was duly made, and it was duly protested for non-payment ; that Shapleigh was now dead, and Rollins & Co. had become insolvent, and that no part of the note had ever been paid, but the same was now due and owing from the defendants to the plaintiffs, if by law the plaintiffs were entitled, under the circumstances proved in evidence, to recover upon the same.

There being no controversy as to the facts above stated, a verdict was taken, by consent, for the plaintiffs, for the amount of the note in suit ; upon which judgment was to be rendered, or the same to be set aside, and judgment rendered for the defendants, or a new trial granted, as the court might direct.

*Wells & Eastman,* for the plaintiffs.

*G. N. Eastman, Christie & Kingman,* for the defendants.

FOWLER, J.   By the express provisions of the act of July 14, 1855 (Laws of 1855, ch. 1658), it was made the duty of every city, town and place in this State to establish one or more agencies " for the purchase of spirituous and intoxicating liquors, and for the sale thereof within such city, town or place, to be used in the arts, or for medicinal, mechanical and chemical purposes ; and wine for the commemoration of the Lord's Supper ; and for no other use or purpose whatever." The selectmen were liable to indictment for refusing to appoint an agent,

even where the town had refused to provide the means to purchase the stock in trade of the agency. *State* v. *Woodbury*, 35 N. H. 230.

The selectmen of Farmington, or the liquor agent by them appointed, might, therefore, properly purchase, upon the credit of the town, the liquors necessary to supply the agency which the selectmen were required to establish. The town was legally liable to furnish the agency with such liquors, their credit might be pledged to procure them, and the selectmen, as the general prudential and financial agents of the town, might, therefore, rightfully bind the town by a note given for the price of the liquors necessary for that purpose. It was within the scope of their authority as selectmen to bind the town by a contract to pay for liquors furnished the agency of the town by them established, without any express authority from the town for that purpose. *Andover* v. *Grafton*, 7 N. H. 298; *Savage* v. *Rix*, 9 N. H. 265; *Glidden* v. *Unity*, 33 N. H. 571; *Hanover* v. *Weare*, 2 N. H. 131; *Hanover* v. *Eaton*, 3 N. H. 38; Ang. & Am. on Corp. 212, and authorities cited; Comp. Laws, ch. 36, sec. 2.

The evidence that there was no vote of the town authorizing the selectmen to bind the town by note, was, then, wholly immaterial, except so far as the question of its admissibility depends upon the construction of that rule of court, which provides that the signatures and indorsements of all instruments declared on will be considered as admitted at the first term, unless the defendant give notice upon the docket within the first four days of the term, that they are disputed, and file his affidavit within that time, that the denial is not for the mere purpose of delay. Rules of 1860, No. 44.

In *Williams* v. *Gilchrist*, 11 N. H. 535, the question of the operation and construction of this rule was considered, and it was there holden, according to the marginal abstract of the point decided, that where an individual intends to

contest the authority or competency of a party to affix the signature to a note, he should give notice on the record, at the first term of court within the rule, that the signature is denied ; otherwise it will be regarded as admitted to be executed by proper authority ; and that evidence of the want of authority to execute the note was improperly received, in the absence of such notice.

In *Nicholas* v. *Oliver*, 36 N. H. 218, which was a suit upon an indorsed note specially declared on, the doctrine of the former case was recognized, but attempted to be qualified and limited by a *dictum* of the judge who delivered the opinion.    The court say : " Without the aid of the rule, the plaintiff would be required to be prepared with proof to the jury on both points [the genuineness of the indorsement and the authority to make it], in order to make out an indorsement, and thus maintain his case. Under the rule, the failure of the defendant to enter the denial at the first term was an admission of the validity of the indorsement as such on both points, as alleged in the declaration, and relieved him from the necessity of producing proof to the jury upon either."    The learned Judge *Sawyer* then proceeds to add : " The operation of the rule is not, however, to conclude the defendant upon either point.    It merely supplies to the plaintiff the evidence which, without it, he would be required to adduce in support of his case upon those points, before the other party could be put upon his defence, and this is all.    The omission to enter the denial is not an admission as of record, by which the defendant is to be barred from introducing evidence to negative the genuineness of the handwriting, or the competency of the authority.    The want of the denial under the rule is only *primâ facie* evidence in favor of the plaintiff, in support of each of these points."

The evidence to show that there existed no vote of the town of Farmington authorizing the selectmen to give notes in behalf of the town, seems to have been admitted

upon the trial, on the strength of these remarks, against the plaintiffs' objection, and it is, therefore, necessary to pass upon their correctness. Besides, it is quite important, as matter of practice, that a plaintiff should know, when he brings a suit upon a note or other instrument specially declared on, and its execution is not denied under the rule, whether he must be prepared on trial with proof to sustain the allegations of the declaration as to the genuineness and authority of the signatures to the instrument and its indorsements, or not. If the rule is to receive the construction suggested in *Nicholas* v. *Oliver,* so far from relieving a party from the burden of establishing the genuineness and authority of any instrument declared upon, it would seem to serve only as a decoy to put him off his guard, and induce him to enter upon a trial without the requisite proof. Thus construed, instead of being a rule to facilitate the progress of trials, and relieve parties from unnecessary expense, it might well be denominated a contrivance to mislead the unwary, and increase the difficulties and magnify the expenses of litigation; for every plaintiff would be bound to secure the attendance of every witness necessary to establish his case, or else be liable at any moment to be obliged to ask for delay in order to procure their testimony.

We have, therefore, no hesitation in saying that the rule under consideration must receive the fair and natural construction given to it in *Williams* v. *Gilchrist;* and, when a defendant does not deny the execution or indorsement of any instrument declared upon according to the provisions of the rule, both the genuineness and authority of its execution and indorsement are to be regarded as admitted for all purposes, on the ground of estoppel, as fully and conclusively as if admitted of record under the hand and seal of the party or his attorney; and if the defendant would introduce evidence to controvert either, it can only be done after he is relieved from the operation of the rule,

upon such terms as will fully indemnify the other party; if the court, in their discretion, shall permit him to be relieved on the ground of improvidence or mistake. 1 Gr. Ev., secs. 27, 169, 170, 186, 205, 206, 207, and authorities cited.

The testimony of the town-clerk of Farmington, tending to show the want of authority in the selectmen to give the note in suit, although immaterial in the view we have taken of their powers, was yet inadmissible, and should have been excluded; but, as the verdict was for the plaintiffs, its improper admission affords no ground for disturbing it.

The deposition of Rollins was rightly admitted. Under the present statute, the deposition of any witness may be taken at the pleasure of the party proposing to use it, and may afterward be used on the trial, if any of the causes justifying its use shall then exist. If, then, a deposition may be taken without the existence at the time of taking it of any cause whereby its subsequent use would be authorized, and be used if any of the various causes specified in the statute shall afterward arise, it seems quite clear that the existence of a cause whereby it might properly be used at the date of the caption, cannot render it inadmissible when afterward offered for a different cause, although the cause in existence when it was taken may have ceased to exist. *Dole* v. *Erskine*, 37 N. H. 316.

When the deposition of the witness was taken, he resided more than ten miles from Dover. Before the trial, he had removed to that city, but was sick and unable to attend court. The party could not, therefore, avail himself of his testimony on the stand, and no good reason can be suggested why his deposition might not as properly be used as if his residence had continued more than ten miles from Dover. It purported to have been taken to be used for a particular cause, it is true, but it was unnecessary to assign any other cause for taking it

than that it might be used on trial, if at the time it might properly be so used for any cause then in existence. Such cause existed in the sickness of the deponent and his inability to attend court, and we think the deposition was properly admitted for that cause.

The selectmen of Farmington having had authority to give the note in suit, and the plaintiffs being innocent indorsees and purchasers thereof for value before its maturity, in the ordinary course of business, without notice or knowledge of any illegality in its consideration, upon general principles, this action may well be maintained, notwithstanding the consideration of the note was the sale of liquors in violation of the statute of Massachusetts; for generally the illegality of the consideration of a negotiable promissory note is no defence to it in the hands of an innocent indorsee and purchaser for value. *Doe* v. *Burnham*, 31 N. H. 426, and authorities; *Crosby* v. *Grant*, 36 N. H. 273.

But the defendants contend that, although the general rule be as we have stated it, they stand upon a different footing, inasmuch as if they may be holden to pay this note to the plaintiffs, they are in a worse condition in relation to the debt than they would have been if a negotiable note had not been given for it, and therefore the selectmen had no authority to give the note. The position seems to rest upon a remark of *Parker*, J., in *Andover* v. *Grafton*, 7 N. H. 298, based upon the authority of *Slark* v. *The Highgate Archway Company*, 5 Taunt. 792; 1 E. C. L. 268. In the last named case, the defendant corporation had been authorized to borrow, upon their own notes, 70,000 pounds, for the purpose of completing their works. One of their notes for 1000 pounds came into the possession of the plaintiff, an innocent indorsee, for a valuable consideration. Upon the trial before *Gibbs*, C. J., the defendants proposed to show that this note was one of several, drawn and issued merely for the accommodation

of the payee, and not for the purpose of raising money to complete the company's works, for which only the company were authorized by act of Parliament to raise the sum therein mentioned by issuing their notes, and was therefore wholly unauthorized and illegal. The judge rejected the evidence, and upon motion a new trial was granted for that cause. There is no opinion of the court in the case, as reported, but the reporter's marginal abstract of the point decided is, that if a corporation is authorized to raise money on promissory notes for a particular purpose, *semble* that evidence may be received to impeach the notes, by showing they were issued for another purpose.

It is quite apparent that the whole extent of the authority of this case goes only to the point that corporations, like natural persons, are bound by the acts and contracts of their agents, only when those acts are done and those contracts are made within the scope of their authority; and that whenever a corporation is sued upon such a contract, whether it be a negotiable promissory note, or any other instrument, they are at liberty to show that the agents making it had no authority to execute it, in whosesoever hands it may be; because, if the agents had only a restricted authority, a contract made by them beyond its limits could impose no obligation on the corporation; and whoever takes a contract executed by an agent, takes it subject to the risk of the authority of that agent to execute it. This doctrine is too familiar to need the citation of authorities. The subject is fully discussed, and most of the American authorities are collected, in Ang. & Am. on Corp., 2d ed., 213, 216, 229, 233, 239–246.

It seems to us the decision in *Andover* v. *Grafton* can and does go no farther than the principle to which we have adverted. It is true, the learned Judge *Parker* not only says: "An indorsee who should take such a note [one given by the selectmen of a town in behalf of the corporation], even before due, would receive it subject to

a liability to make the same proof respecting the authority of the selectmen to execute it in that particular case, as would be required of the promisee;" but adds, " and of course must be chargeable with notice of all the facts, and the note in his hands be liable to the same defence as in the hands of the original promisee;" and then cites *Slark* v. *The Highgate Archway Company*, as authority to sustain his position.

It is undoubtedly true, as a general principle, that whatever is notice enough to excite attention, and put the party upon his guard, and call for inquiry, is notice of every thing to which such inquiry would naturally have led. Where a person has sufficient information to lead him to a fact, he shall be deemed conversant of it. *Kennedy* v. *Green*, 3 Myl. & K. 719, 721, 722; *The Ploughboy*, 1 Gall. 41; *Hinde* v. *Vattier*, 1 M'Lean 118; *Bowman* v. *Walker*, 2 M'Lean 376; Sugd. Vend. & Purch. 1052, and cases cited; *Carr* v. *Hilton*, 1 Curt. C. C. 390; *Hastings* v. *Spencer*, 1 Curt. C. C. 504.

In the case before us this rule does not apply to the matter of defence relied upon. The note was signed by the selectmen for the defendant town, and therefore it was incumbent upon the plaintiffs to inquire whether it was signed by them within the scope of their authority, and given for a debt for which the credit of the town could properly be pledged by them, and this was all. They were not bound to inquire and ascertain whether or not the liquors purchased to enable the town to perform the duties imposed upon it by statute, were purchased in violation of a law of Massachusetts, or not, because that question was not one material to the authority of the selectmen to give the note. If they examined the statute under which the town acted, they found no special provision made for the supply of the town agents with liquors, and being satisfied that the note was given by the selectmen within the scope of their authority, for liquors actu-

ally received by the town to its own use, they were not required to go further, and inquire into the provisions of the statutes of another State, and into the question whether or not the sale of the liquors for the price of which the note was given was thereby prohibited; and if so, still further, whether or not our courts would enforce the prohibition here. They had no notice of any such facts, nothing to call their attention to them and put them upon their guard in relation to them.

To hold that if the defendants would be worse off in defending against the note, than they would have been in defending against the account for which it was given, the selectmen had no authority to give it, would make the authority of the agents depend upon the result of subsequent proceedings against their principal, and not upon the question whether or not they were acting at the time of the transaction within the range of their legal authority. This would be quite absurd. If the selectmen had authority to give a negotiable note for the debt incurred in the purchase of liquor for the town agency, they had that authority none the less, because, upon well established principles, that note in the hands of a *bonâ fide* indorsee for a valuable consideration, without notice and before maturity, might not be open to some defences to which it might have been subject in the hands of the original payee, or which might have been made to a suit to enforce the debt for which the note was given. The town is a corporation, and like all other corporations must be subject to the same rules of law as are applicable to individuals. It is well settled that an individual who gives his note for liquors sold in violation of law, cannot be permitted to show the illegal consideration as a defence to a suit upon the note by an actual purchaser thereof before maturity and without notice. Whether he gave the note personally, or by an authorized agent, could make no difference. So it must be with a town or other

corporation. The fact that the note is executed by an agent is apparent upon its face ; of course the purchaser has notice, and buys the note at the risk of the authority of the agent to give it, but this is all. He has no notice, express or implied, of any illegality in the consideration, or in the sale whereby the debt was created for which the note was given, and is not therefore to hold it subject to any defence of that character.

With these views, there must be

*Judgment upon the verdict.*