## BACKMAN *v.* CHARLESTOWN.

The power of selectmen of towns to make rules to govern agents appointed by them, extends to the purchase as well as the sale of spirituous liquors, and under that power they may prohibit the use of the town's credit altogether.

If, however, these rules are willfully made so stringent as to defeat the object of the law, the selectmen would be subject to indictment in the same way as if they refused to appoint an agent at all.

When the appointment of such agent contains a prohibition of the use of the town's credit, and is duly recorded as required by law, every one who sells liquor to him is charged with notice of such limitation, and can maintain no action against the town for the price of the liquors.

When the time of making the record does not appear on its face, yet as a record is required by law, the seller is put upon inquiry as to the nature and extent of the agent's authority, and will stand charged with notice of all that reasonable inquiry would have given him.

If, however, the goods had been purchased by the agent, assuming the right to pledge the town's credit for the price, and the town had afterward received them with a knowledge of the way they were purchased, and applied them to its use, this would have been a ratification of the agent's authority, and the town would be bound.

THIS was an action of assumpsit for goods sold and delivered ($190), and upon an account annexed as follows :

New-York, April 17, 1856.

Town of Charlestown (S. B. Osgood, agent) ;

Bought of Charles Backman :

| | |
|---|---|
| ⅛ cask of pale A. S. brandy, fourth proof, 20½ gallons, at $4, | $82.00 |
| 1 barrel Swan gin, 43 gallons, at $1.50, | 65.75 |
| 1 barrel alcohol (95), 42 gallons, at 64 cts., | 26.88 |
| Cartage, | .38 |
| | $175.01 |

It appeared that one W. W. Drew was a traveling agent of the plaintiff, for soliciting orders and collecting bills, and was at Charlestown, in April, 1856, and called on Solomon P. Osgood, and by his order wrote to the plaintiff as follows:

"Charlestown, April 14, 1856.

Friend Charles: Dear Sir—Please send to the town of Charlestown, N. H., one barrel of alcohol (95), at market price; one barrel of gin, at $1.50; and one eighth cask of pale brandy, at $4. Make and send bills to S. B. Osgood, agent, Charlestown depot. Please pay freight, as Boston folks have done so. Send as good as you can afford to.

W. W. DREW."

Drew testified that Osgood ordered the liquors for the town of Charlestown, and said he was agent for the town; said he was town agent, but the witness does not recollect that he said any thing of charging the goods to the town of Charlestown. The plaintiff's sales of liquors were all made in New-York.

The plaintiff introduced the deposition of S. L. Fletcher, who testified that he was in mercantile business in Charlestown, in 1855 and 1856, with S. P. Osgood, who then acted as an agent of the town of Charlestown for the purchase and sale of spirituous liquors. To this evidence it was objected that an agency for the sale of spirits for a town, under the statute of 1855, can not be proved by showing that a person acted as such agent; but the court held the evidence admissible, and the defendants excepted.

The deposition stated that Osgood acted as agent of the town from August, 1855, to May 1, 1856, after which Dr. Adams acted as agent. When Osgood ceased to be agent there were liquors on hand, which were delivered over to the next agent, May 1, 1856. The witness recollected that, shortly before, there were among these two casks, marked S. B. Osgood, agent, one of which contained gin,

the other alcohol, B, in the name of Osgood being inserted, as he remembers, instead of P. No others were so marked. A letter, inclosing a bill, was sent by the plaintiff to Osgood, the same before spoken of by another witness, and was received before the liquors arrived. The liquors were marked S. B. Osgood, agent, and the two casks of gin and alcohol agreed with the bill. He was there when the liquors on hand were passed over to the next agent, but can not say that either of those casks was then on hand or passed to him; but all which were on hand were so passed. Osgood received liquors from the town, of different kinds, when he began to act as agent.

The bill referred to was put in evidence, and corresponded with the account annexed to the writ. The plaintiff having closed his case, the defendants moved for a nonsuit, which the court declined to order.

The defendants then introduced C. Kimball, town-clerk of Charlestown, who produced a book of records of Charlestown, containing 103 pages of records, and 30 distinct subjects of record, without any index, and the plaintiff objected to its admission; but the court admitted it, and the plaintiff excepted. In this book was recorded the following appointment:

" To S. P. Osgood, of Charlestown, in the county of Sullivan. We, the subscribers, selectmen of Charlestown, in conformity to the law of New-Hampshire, passed June session, 1855, entitled " An act for the suppression of intemperance," do appoint you an agent for said town of Charlestown, for the purchase of spirituous and intoxicating liquors, and for the sale thereof, at the store now occupied by Fletcher & Osgood, to be used in the arts, or for medicinal, mechanical and chemical purposes, and wine for the commemoration of the Lord's supper, and for no other use or purpose whatever. In the purchase and in the sale of such liquor you are to conform strictly to law, with the following additional rules and regulations,

adopted by us, the selectmen of Charlestown : (1) You are not in any case to purchase on the credit of the town. (2) You are to account for all sales in money, whenever called upon by the selectmen. (3) In making purchases, you are to advise and consult with the board of selectmen as to the kind, quantity and quality of wines and liquors, and to follow their advice and direction in the purchase thereof. In full compensation for your services, you are to be paid by said town at the rate of one hundred dollars per year.

Given under our hands at Charlestown, this eighteenth day of August, 1855.

W. A. RAND,   } *Selectmen of*
S. H. GRINNELL, } *Charlestown.*

Recorded:   SAM'L L. WILDER, JR., *Town-Clerk.*"

It was objected that the record was not dated, and the court admitted the evidence, subject to the plaintiff's exception.

The appointment of Dr. Adams was dated April 28, 1856, and appeared to be in the same form as that of Osgood, and recorded in the same manner. It was objected that it did not appear that any funds for the agency were furnished by the selectmen.

The court intimated that the jury would be instructed that it was immaterial whether funds were furnished by the selectmen or not; and that the agent, having by his commission no power to purchase on the credit of the town, or without instructions from the selectmen, the town were not bound. A verdict was taken by consent for the defendants, subject to the opinion of the Supreme Judicial Court; and it was thereupon ordered that the questions arising in the case be transferred to the law term.

*Snow,* for the plaintiff.

*Cushing & Chapin,* for the defendants.

BELLOWS, J. It must be regarded as now settled in this state, that the selectmen have the power to authorize the town agents to buy liquor for the supply of liquor agencies upon the credit of the town. *Great Falls Bank* v. *Farmington,* 41 N. H. 32. But the great question in this case is upon the effect of the limitation on the power of the agent, as contained in the appointment. And on this point it may ·be useful to ascertain the character of his agency; for, if he be regarded as a general agent, persons who deal with him are not bound by any secret instructions, imposing a limitation upon such general authority, unless such limitation is brought to their knowledge. As to special agents, the law is understood to be in some respects different. Story, in his work on Agency (page 19), lays it down, that a special agency properly exists where there is a delegation of authority to do a single act, and a general agency properly exists where there is a delegation of authority to do all acts connected with a particular trade, business or employment; and he instances, as a special agency, a power to execute a particular deed, or buy a particular article of merchandise, and, as a general agency, a power to execute all deeds, sign all contracts, or purchase all goods required in a particular trade, business or employment. This distinction is recognized in *Hatch* v. *Taylor,* 10 N. H. 543, by *Parker,* C. J.; and, also, in 2 Kent's Com. 620; and in *Lobdell* v. *Bohn,* 1 Met. 202; Chit. on Cont. 200–215, and note.

In the case before us, the agent was intrusted with the business of buying and selling spirituous liquors. He was made the town agent for that purpose under the statute, and the business was that of the town, which

alone was interested in the profits derived from it, and to which the liquors purchased by him belonged. He was, then, the general agent of the town in the transaction of this business, and, while acting within the general scope of his authority, could bind it. Independent of the express limitations upon his authority set up here, we think he might rightfully pledge the credit of the town for the price of the liquors he purchased. It is true that towns are municipal corporations and of limited powers, but within the range of the powers conferred upon them by the laws, they stand, for aught we can see, upon the same footing as private individuals. So, in respect to this traffic in spirituous liquors, the statute has made it the legitimate business of the town, and imposed upon it the duty of sustaining such agencies, and the selectmen are liable to indictment for neglecting to appoint an agent. *State* v. *Woodbury*, 35 N. H. 233. So far, then, as this traffic is lawfully conducted, it must be regarded in the same light as any other lawful business of the town, and the same rules are to be applied in determining the extent of the agent's authority ; and so it must have been regarded in the case of *Great Falls Bank* v. *Farmington*, where it was held that the selectmen might bind the town by a promissory note. In the case of *Savage* v. *Rix*, 9 N. H. 266, where the defendants were appointed a committee by the town of Dalton to lay out the sum of three hundred dollars to repair a certain road, and, having contracted with the plaintiff to do a part of the work, gave him a note, which was the subject of the suit, the court held (*Parker*, C. J.) that, as the vote to raise the money was passed July 4, and provided that it should be laid out by September 1 of the same year, it might fairly be implied that they were authorized to make contracts in advance of the collection of the money, and pledge the credit of the town. But it was held that, being appointed to perform a specific service, the power to bind the town

by a promissory note was not a necessary incident, and that in this respect they differed from the selectmen, who have powers as general as any agents the town could appoint, though not, strictly speaking, general agents. In this case the agency was, strictly speaking, special. But it was held that the committee could pledge the credit of the town upon the general principle that the authority to do an act carries with it an authority to use the appropriate measures to accomplish the object proposed. *Goodale* v. *Wheeler*, 11 N. H. 424. And it is a well established principle that an authority conferred upon an agent is construed to include all the necessary and usual means of executing it with effect. Story's Ag., sec. 58, and numerous cases cited; 2 Kent's Com. 618–832; Story's Ag., sec. 102.

In the case at bar the agent had power to purchase liquors in the name of the town, and when purchased they clearly became the property of the town. The town furnished no funds to pay for the liquors in this case, and, independent of any specific instructions, it might fairly be inferred, it being the duty of the town to supply the agency with liquors, that the agent would buy on the credit of the town, and pay out of the proceeds of sales made by him. In *Perrotin* v. *Cuculler*, 6 Louis. 587, it was decided that an authority to buy a cargo for the principal, includes, as an incident, authority to give notes and draw and negotiate bills on his principal, when he provides no other funds. Cited in Story on Agency, sec. 103. So, authority to superintend the building of a meeting-house includes authority to contract for the building on the credit of the town. *Damon* v. *Inhabitants of Granby*, 2 Pick. 345. So, a power to get a note discounted includes the power to indorse it in the name of the principal. Story's Ag., sec. 59. So, an authority to sell a horse implies a power to warrant him. Story's Ag., sec. 59, 102–132; 2 Kent's Com. 621, 838, and cases cited; 3 T. R. 757; 15 East 45; *Helyear* v. *Hawke*, 5 Esp. 72. A power to

sell goods includes a power to warrant them. *Andrews* v. *Kneeland*, 6 Cow. 354; *Hunter* v. *Jameson*, 6 Ired., N. C., 252. So, a power to sell goods includes a power to receive payment. Story's Ag., sec. 102. An authority to buy goods for the principal, but without furnishing funds to pay, unquestionably implies a power to buy on the credit of the principal. *Sprague* v. *Gillett*, 9 Met. 91. A power to sell and convey land, with no restrictions, gives power to convey with warranty. Chit. on Cont. 201–218, note; *LeRoy* v. *Beard*, 8 How. U. S. 451; *Peter* v. *Farnsworth*, 15 Vt. 155; *Tagged* v. *Stanbury*, 2 McLean 543.

Independent of the restrictions, then, our conclusion is that the agency was a general one, and that it was within the scope of the agent's authority to pledge the credit of the town.

It is quite clear that in the case of a general agent, the party who deals with him is not affected by the instructions which are given to guide him in the execution of his duties, unless they are brought to his knowledge. Having the powers of a general agent conferred upon him, third persons are entitled to deal with and accredit him as such, and may safely assume that he is fully authorized to act for his principal so long as he keeps within the general scope of his authority. If he violates his instructions, he is answerable to his principal for the injury it may cause him, but it can not affect the validity of the contract.

And even though the principal may be innocent of any wrong purpose, yet, having for his own convenience voluntarily placed the agent in a situation of apparent authority, it is right that he should suffer rather than innocent third persons, who have confided in the authority which the agent was thus enabled to assume. Chit. on Cont. 199, 215, and cases cited; Story's Ag., sec. 73; 2 Kent's Com. 620. And this principle is held to be necessary to prevent fraud, and to encourage confidence in dealing. In the

Backman v. Charlestown.

cases of *Hatch* v. *Taylor*, 10 N. H. 538, and *Towle* v. *Leavitt*, 23 N. H. 374, these views are distinctly recognized.

But it is contended that the plaintiff is to be charged with notice of the limitation upon the agent's authority contained in his appointment. If so, it is clear, upon both principle and authority, that the town would not be bound. The inquiry, then, is, whether the plaintiff is to be charged with said notice. By the law of 1855 (ch. 1658, sec. 8), it is provided that every agent shall receive a certificate of his appointment, "which shall be recorded by the clerk of the city, town or place, together with the rules prescribed for his observance." And in section 7 of the same act it is provided that the agent "shall, in the purchase and sale of such liquor, conform to such rules and regulations as said mayor and aldermen or selectmen shall prescribe, not inconsistent with the provisions of this act."

The effect, then, of these provisions is, that the appointing power shall prescribe rules and regulations both for the purchase and sale of liquors by the agent, and have them recorded by the town-clerk. The object of this record must have been to give notice, not only of the appointment of the agent, but of the rules that were to guide him in the discharge of his duties, both in the purchase and sale of liquors. And we see no reason to doubt the power of the selectmen to withhold from the agent the authority to pledge the credit of the town. In the case of a private individual or corporation, there can be no doubt that such a limitation might be imposed, and we perceive no ground for a different rule in this case.

It is true that it is the duty of the town to sustain one or more agencies for the purchase and sale of liquors, but there is nothing that requires that the agents should be clothed with authority to use the credit of the town at discretion.

On the contrary, it might well be regarded as expedient that the liquors should all be purchased with cash in hand, and the credit of the town not used at all.

In such case, the want of a sufficient supply would afford neither to the agent or vendor of the goods any legitimate cause of complaint. If, however, the selectmen willfully make their rules so stringent as to defeat the object of the statute, they would be subject to indictment, the same as if they failed to appoint an agent altogether.

The purpose of the record, then, being to give notice to persons interested, of the appointment of the agent, and the rules he is to observe, the question is whether the plaintiff is to be charged with such notice; and we are inclined to think he is. As in the case of the registration of deeds, he is presumed to know the law which requires a record of the appointment and the rules for the observance of the agent; and reasonable diligence would have led him directly to a knowledge of the limitation in the agent's authority. Under such circumstances, there can be no ground for contending that the instructions were secret, where a public record required by law is duly made. *Tripe* v. *Marcy*, 39 N. H. 439; *Odlin* v. *Gove*, 41 N. H. 465, and cases cited. So it is held that a purchaser is supposed to have knowledge of the instrument under which the party with whom he contracts, as executor, or trustee, or appointee, derives his power; 1 Story's Eq., sec. 400; and whatever is sufficient to put a party upon inquiry is, in equity, good notice. So in Story on Agency, section 72, it is laid down that whenever an authority purports to be derived from a written instrument, or the agent signs a contract " by procuration," the other party is bound to take notice that there is such an instrument, and he ought to call for it, and examine and see if it justifies the act of the agent; and this is but a reasonable precaution, for he is put upon inquiry, and if he suffers for want of such inquiry it is his own fault. This goes upon the ground that, having information of the existence of such written authority, he should inquire for it. So where, from the nature of the transaction, a written authority is

presupposed, it is the duty of a party dealing with the agent to make inquiries as to the nature and extent of the authority. Story's Ag., sec. 73, and cases. In the case before us, a written authority is required by law, and the plaintiff is presumed to be aware of it, and is, therefore, put upon inquiry.

Our conclusion then is that when the appointment and limitation of the agent's authority is duly recorded, a party dealing with him must be deemed to have constructive notice of such limitation.

But it is said that as there was no date to the record it avails nothing, and therefore it stands as if there was no record at the time of the sale.

In reply to this it is urged that apart from this record there is no evidence of any valid appointment, inasmuch as the law requires the appointment to be in writing. However this may be, and whether a person acting under color of an appointment not in writing may be regarded as an agent as to third persons, it is not necessary now to decide; because we are of the opinion that upon well established principles the plaintiff was put upon inquiry as to the authority of the agent, and it does not appear that he has used that reasonable diligence to ascertain the extent of the agent's power, which the law requires. If no record was made at all, the plaintiff should have demanded an inspection of the agent's certificate, as he must be supposed to know that regularly he should have one. Story's Ag., sec. 72. As no such inquiry is shown to have been made, and it does not even appear that Osgood represented that he had any authority to pledge the credit of the town, it must be deemed that the plaintiff had constructive notice of the limitations upon the agent's authority. In *Odlin* v. *Gove*, before cited, what shall be regarded as reasonable inquiry is a question of fact to be found by the jury upon all the circumstances of the case.

It is urged further by the plaintiff that however this may be, the agent assumed authority to bind the town ; that he purchased the goods which afterward came to the use of the town, and that therefore the town is bound to pay for them ; if, with a knowledge that the goods were so purchased, the town received them and applied them to its own use, this would be a ratification of the purchase.

And the first inquiry on this point is, was there evidence on which it was competent for the jury to find that the liquors came to the use of the town.   There is no evidence upon this point prior to the delivery of the entire stock to Osgood's successor, except the fact that packages of the character described were among the goods at the agency.   It is true that the liquor may have been sold and the proceeds paid to the town, but of that there is no proof, and we think it can not be presumed.   As to the delivery to Osgood's successor, the proof is, substantially, that the stock on hand was all delivered to Adams ; but the witness is unable to say whether the liquors in question were included or not, though he remembers shortly before they were with the rest of the stock.   As to the authority of Adams no question seems to have been made, and a delivery to him, for aught we can see, might well be regarded as a delivery to the town.   If, then, the goods were delivered by Osgood, as the goods of the town, to Adams, his successor, with knowledge of the way they were bought, and were received and converted to the town's use, we think the plaintiff might recover of the town in an action for goods sold and delivered.   If, however, the town did not receive the goods by virtue of Osgood's purchase, but actually received them by a purchase from Osgood and a payment to him of the price, it would not be a ratification ; but no such evidence is reported, and we are inclined to hold that the evidence upon the question of ratification should have been sub-

mitted to the jury, had it been desired by the plaintiff.

We do not, however, decide this point; because the verdict having been taken by consent, and no point made of the matter of ratification, and it being obvious that the jury might legally have found for the defendant, there is no ground for disturbing the verdict. The intimation which the court made as to the instructions that would be given, related, as we are disposed to think, to the original power of the agent to bind the town, and not. to the question of ratification. And the plaintiff having consented to a verdict, it must stand, unless the instructions would have been wrong, or the jury could not legally have found for the defendant.

There must, therefore, be

*Judgment on the verdict.*