DECEMBER 18, 1874. }          RICHARDS *v.* COLUMBIA.

Selectmen cannot lawfully act as agents (under Gen. Stats., ch. 99) for the purchase of spirituous liquors, or appoint one of their number to be such agent, and cannot bind the town for the price of spirituous liquors so purchased.

The plaintiffs cannot, after action commenced, elect to apply payments made generally on account to that part of the account which is illegal.

ASSUMPSIT, tried before·LADD, J., to recover a balance claimed to be due on an account for intoxicating liquors sold and delivered by the plaintiffs to the defendants in 1868. The liquors sold were embraced in three bills, the dates and amounts of which were as follows:

(1) March 23, 1868, $530.28; (2) August 11, $273.76; (3) December 7, $71.26—$875.30.

The credits, including $50 discount on a barrel of alcohol, which is allowed by the court, were as follows:

May 21, 1868, by cash, $30; July 3, $32; August 29, $75; October

9, $100 ;  December 5, $160 ;  February 15, 1869, $110 ;  April 15, $61 ; May 25, $30 ;  October 28, 1870, $50 ;  May 9, 1871, discount on alcohol, $50 ;  horse, $127—$825.

The cause was tried by the court, and the following facts were found specially, whereupon such judgment is to be rendered as may be ordered by the whole court.

Before the first bill of liquors was ordered, in the spring of 1868, two, at least, of the three selectmen of Columbia, upon consultation, determined to appoint a liquor agent for the coming year, and that the selectmen, on behalf of the town, should purchase liquor and supply the agency therewith, and that the purchases for that purpose should be made by A. H. Bundy, one of the board.   Accordingly, Bundy saw P. S. Benjamin, an agent of the plaintiffs, and gave him an order for the liquor in the first bill.   Benjamin forwarded the order to the plaintiffs in Boston, and they there delivered the liquors to a common carrier (charging cartage), directed to the town of Columbia ; and they were received according to the bill.   In the meantime the selectmen, or at least two of them, had determined to appoint one Harvey, agent, and about the time the liquors arrived, and before they were put on tap, executed and delivered to Harvey an appointment as liquor agent for the ensuing year, in due form ; but the same was never recorded in the town-clerk's office, and there is no certificate upon it that Harvey ever took any oath of office.   The other two bills of liquor were ordered by Bundy of Benjamin in the same way, and forwarded by the plaintiffs in the same way, except that they were directed to Harvey, liquor agent, instead of the town.   All the selectmen understood that the purchases were made on behalf of the town ; that the business of the liquor agency was the business of the town, and so treated it throughout their official year, and so reported upon it to the voters of the town at the annual meeting in 1869.

It did not appear that the plaintiffs, at the time of either of the sales, held any appointment from the governor of New Hampshire to supply agents with liquors.   But when the second and third bills were sold, the plaintiffs, having a license in Massachusetts, had a legal right to make the sales in that state, and, so far as regards any questions that arise in this case, I find that all three sales were made and completed in Massachusetts.   All material statutes of Massachusetts are to be regarded as proved, and may be referred to on the argument.   The specification printed in the case was understood to be a copy from the plaintiffs' book, and receipts were given for the money as paid, to apply generally on account.   Said receipts may be referred to in the argument.   It appeared that the plaintiffs had no authority to sell liquors under the laws of Massachusetts at the time of the first sale.   If the plaintiffs can recover on the foregoing facts, they are to have judgment for $82.11, as of the November term, 1873.

*Shurtleff* and *Ray & Drew*, for the plaintiffs.

*G. A. Bingham*, for the defendants.

*Cushing, C. J. The first bill of liquors was bought in violation of the law of Massachusetts, and no action can be maintained for any part of it. The case does not find that any application of the amount paid had been made before the commencement of the action. It is well settled that the plaintiffs cannot now elect to apply the payments to that part of the claim which is illegal; and all the other items of the account are paid by the payments which appear in the plaintiffs' account.

So far, then, as the first item of the plaintiffs' account is concerned, the matter stands as if the action was brought to recover the unpaid part of that alone. The purchase and sale of the liquors contained in that item being unlawful, no action could be maintained to recover the price.

The principle, as well expressed by Lord Mansfield—*Holman* v. *Johnson*, Cowp. 341—is, that a party cannot recover who is obliged to found his action upon his own violation of the law ; and upon the same principle, says Gray, J., in *Cranson* v. *Goss*, 107 Mass. 439 (Am. R. 45),—" It follows that, as between the parties, it is incapable of being confirmed or ratified; for, in suing upon the original contract after its ratification by the defendant, it would still be necessary for the plaintiff, in proving his case, to show his own illegal act in making the contract at first."

On the facts found and reported by the court the plaintiffs cannot recover.

There is another view which may be taken of this transaction, and which leads to the same result.

The business out of which the claim arose, which is the subject-matter of this suit, was an agency established under Gen. Stats, ch. 99. This law, like all the other laws of the state of New Hampshire, is to be administered by the court fairly and impartially. It is not for us to say that we do or do not like the law.

The leading principle of this statute is the absolute prohibition of the sale of spirituous and intoxicating liquors in the state of New Hampshire, excepting for certain specified purposes. The statute makes it the duty of the selectmen to appoint an agent or agents for the sale of such liquors; and it has been held by our court that it is the duty of the town, and when by the neglect of the town it becomes necessary, it is the duty of the selectmen to provide for the agent the means of carrying on the agency. *State* v. *Woodbury*, 35 N. H. 232. When they have done this in good faith, their duty in this particular is performed. It is their duty to give the agent a written appointment which must be recorded by the town-clerk, to establish suitable regulations for the guidance of the agent,—perhaps to take from him a bond for the faithful performance of his duties,—and it seems to me that, by the terms of the statute, it is clearly their duty to watch the agents, and see that they conform to the regulations prescribed, and discharge their duties faithfully, and in particular to keep a watchful supervision of the purchases and sales, and see that the agent is deriving no

*Ladd, J. did not sit.

pecuniary emolument other than the stated compensation fixed by the selectmen, which compensation is not to be increased or diminished by any increase or diminution in the amount of sales and purchases.

Thus strictly has the law endeavored to guard this matter of the purchase and sale of spirituous liquors. It proposes to pay the agent a reasonable compensation for his labor and responsibility; it provides that he shall not have any pecuniary advantage otherwise, and that no person shall make any money out of it, unless incidentally a profit may accrue to the town; and it is plain that, if the business is conducted with proper care and honesty by the agent, and diligently supervised by the town or city authorities, whose duty it is to do so, there is little chance of loss.

Such being the duties of the selectmen, it seems plain that they cannot assume the agency themselves. Neither can they appoint one of their number to be the agent, much less authorize one of their number to make purchases without any written appointment duly recorded.

It seems to be now conceded that the authority of selectmen is special and limited, and not general. It is entirely the creation of statute law, under the construction of the courts. Their authority being thus limited and special, and a creature of the statute, it is plainly the duty of all persons dealing with the selectmen in that capacity to take notice of the extent and limits of their authority. *Sanborn* v. *Deerfield*, 2 N. H. 253; *Andover* v. *Grafton*, 7 N. H. 300; *Rich* v. *Errol*, 51 N. H. 350; *Backman* v. *Charlestown*, 42 N. H. 125.

Now, one of the limitations of the selectmen's authority, as the town's managers of its prudential affairs, is, that the act done must be one necessary for the town to do in the discharge of its duties or in the protection of its rights.

It is clear that the purchase of spirituous liquors, either on the credit of the town or otherwise, is not one of these acts within the scope of the selectmen's authority. We have seen that when an agent is appointed, and provided with the means of carrying on his agency, which may be by authorizing him to buy on the credit of the town, if necessary, the duties of the town and of the selectmen in this direction have been performed; and all that the selectmen have to do is to see that the agent does his duty, and, if he fails, to revoke his agency and appoint another.

If the selectmen can be these agents, or can delegate this agency to one of their number, who, then, is to exercise that power of revision which the statute confides to them? *Quis custodes custodiet?* The statute provides that the business of the liquor agency shall be done for a fixed compensation, which is not to be enlarged or diminished by any increase or diminution of the amount of business. From what source, then, shall the selectmen derive their compensation for this service of purchasing liquor? If the object of this statute is to be fulfilled, and the citizens of towns are to have placed within their reach the pure and unadulterated liquors which only would be fit for the mechanical, medicinal, chemical, and religious purposes for which alone the statute

authorizes their sale, the duty of purchasing these liquors would be most onerous, difficult, and delicate. If the selectmen are to do this work they ought to receive an adequate compensation, and not to be left to rely upon the commissions paid by those from whom they purchase, and which at present seem to be the only source from which they can derive their pay. It seems to me certain that the selectmen cannot, under the statute, lawfully buy spirituous liquors for the town agency, on the credit of the town, especially when, as in this case, there was no legally appointed agent; and for liquors thus bought the town cannot be compelled to pay. The plaintiff was bound to take notice of the defect in the agent's appointment. *Backman* v. *Charlestown*, 42 N. H. 125.

The case of *Great Falls Bank* v. *Farmington*, 41 N. H. 32, is an authority to show that the selectmen may authorize the agent to purchase on the credit of the town, and give a note for the amount of such purchase; but the *dictum* that the selectmen might make the purchase was not required by the case. In the able and exhaustive discussion of the powers of selectmen, in *Rich* v. *Errol*, 51 N. H. 350, the learned judge is careful to substitute for the words "purchase of liquors" the words *supply of liquors*. The purchase of these liquors, then, by the selectmen, or one of their number, on the credit of the town, was unlawful; and the town is therefore not bound to pay, unless some further principle can be found by which they can be compelled to do so.

Smith, J. It is conceded that the sale of March 23, 1868, amounting to $530.28, was illegal, because the plaintiffs had not at that time a license to sell spirituous liquors. The question, then, how the plaintiffs applied the payments that were made to them by the defendants from time to time is not important, because they were bound by law to apply the money received by them first in payment of the valid items, irrespective of their order in their account. Any balance then remaining might be applied in payment for goods illegally sold. This was clearly settled in *Hall* v. *Clement*, 41 N. H. 166, and is supported by unanimous authorities there cited;—see, also, *Kidder* v. *Norris*, 18 N. H. 532.

. Applying the payments made by the defendants to the plaintiffs in this case in accordance with this rule, the sales of August 11 and December 7 must be regarded as paid, and the balance of payments, amounting to $479.98, can be applied on the bill of March 23, leaving a balance of $50.30 due upon that bill; and, as the sale was prohibited by law, the plaintiffs cannot recover the same.

I also concur with the chief justice in the opinion that selectmen cannot act as agents of their town for the purchase of spirituous liquors, and cannot bind their town for liquors so purchased by them.

Foster, C. J., C. C. At the time of the first payment in discharge *pro tanto* of the defendants' indebtedness, there was no special application of it by the plaintiffs, and they cannot now make an application

such as shall suit their case as it now stands, and in opposition to the application which the law itself makes. They cannot apply the payment to an item of the account not legally payable. The remainder of the plaintiffs' account is paid and discharged by the money credited, and therefore they cannot recover anything in this action.

The traffic in spirituous liquors is condemned by the policy which has caused the enactment of a statute for its suppression in this state; and as its sale is restricted by stringent limitations, so is its purchase, so far as a purchase of such a commodity may in any sense be regarded as the subject of municipal regulation.

An individual may buy liquor, and not thereby commit an offence against the law; but a town is not thus protected. The law does not undertake to regulate the conduct of an individual, except so far as it strives to protect him and his family against the consequences of his intemperance, by treating the excessive indulgence of his intemperate habits as a crime, or at least an offence against the good order of society; but, in the case of a town, the law has undertaken to *regulate* the traffic, —that is, the purchase, as well as the sale, of spirituous liquor. Gen. Stats., ch. 99, sec. 6. It must be sold with great caution. In theory, it is to be sold only for such purposes as contemplate the use of a pure article; and it should only be *purchased for sale* by an agent such as the town may deem discreet and trustworthy. Therefore it is provided by the law —Gen. Stats., ch. 99, sec. 6—that no innkeeper, or keeper of a place of public entertainment, shall be a town agent. And although the selectmen may be as judicious as any person they might appoint, still, as they are constituted the *appointing power*, it would seem quite ridiculous to say they might appoint themselves to the office of town agent.

The proposition needs only to be stated to exhibit its absurdity.

Selectmen are entrusted with the power of controlling, for the interests of the inhabitants of a town, the traffic in spirituous liquors, and if they themselves undertake this traffic, to whom shall they be responsible? The object of the statute was to create an agent who should be under control, and not irresponsible.

I agree with my brethren that there must be

<div style="text-align:right">

*Judgment for the defendants.*