Rockingham
No. 7634

## TOWN OF RYE

### v.

### JOHN A. McMAHON

October 31, 1977

*Tetler & Holmes,* of Hampton (*Mr. Gary W. Holmes* orally), for the plaintiff.

*Shute, Engel* and *Frasier,* of Exeter (*Mr. David C. Engel* orally), for the defendant.

DOUGLAS, J. This case, as it was briefed and argued before us, presented questions concerning the power of a town board of adjustment to grant a variance from a municipal zoning ordinance that would authorize a use specifically prohibited throughout the town and the extent to which the town would then be estopped to enjoin the use after the variance had been implemented. However, careful scrutiny of the record below indicates that the requisite factual predicate to decide those issues does not exist.

The defendant and his wife purchased the property in question, located on Ocean Boulevard in Rye, New Hampshire, on January 28, 1971. The land was occupied by four buildings, two duplexes and two single-dwelling units, in an advanced state of disrepair. The Rye zoning ordinance specifically prohibits apartments anywhere in the town of Rye. There was evidence that the former owner had used the buildings for rental property. But the Master (*Leonard C. Hardwick,* Esq.) found no evidence that such use had been nonconforming or a nonconforming apartment house. Section 15 of the Rye zoning ordinance applicable to defendant's property allows rental of "housekeeping units" as tourist cabins or motel rooms, that would otherwise be suitable as apartments provided occupancy does not exceed four months. Section 13 of the ordinance also permits indefinite continuation or restoration of nonconforming uses in accordance with the Building Code.

Before title to the property had passed, but after the purchase and sale agreement had been signed, the defendant examined the buildings with the Rye building inspector. The latter recommended demolition and replacement of the existing structures. Toward that end, the defendant petitioned the board of adjustment for a variance to construct "sixteen new housekeeping units under Section 15-13 [sic] . . . ." The petition additionally requested a variance to construct the units "700 sq. ft. in lieu of specifications in Section 15-B," which requires an area of 1000 square feet for tourist camps and motels. The petition was denied on February 9, 1971. Defendant received a rehearing of his petition on March 16. He reduced his request to twelve "new housekeeping units . . . under Section 15-13 [sic] . . . ." again requesting area specifications of 700 square feet. The minutes of this hearing disclose opposition by a Mrs. Frances J. Holway. She asked for an explanation of the "difference between apartment and housekeeping units." Someone, the minutes do not disclose whom, explained that the latter were for occupancy not over four months. At a hearing before the master, she testified positively that the defendant himself promised that no one except himself, his family and employees would live there for more than four months. The petition was granted subject to certain conditions not relevant here. On April 1, 1971, the defendant applied to the building inspector for a permit in which the intended use was listed as "Housekeeping Units, Motel." Nowhere in any document before the board or the inspector did the defendant use the word "apartment."

Construction was completed on approximately June 1, 1972, and the defendant began renting the units as apartments for year-round occupation. During the construction period the building inspector and members of the board of selectmen visited the site, but never advised the defendant that he was in violation of the ordinance. On April 24, 1973, nearly eleven months after the apartments were opened, he was arrested. A trial in Rye Municipal Court resulted in a verdict of not guilty. The town then sought an injunction against continued use of the buildings as apartments. A hearing before the master ended in the issuance of the injunction. The defendant seasonably excepted and the case was reserved and transferred by *Perkins, J.*

■■ The master found that an apartment house was not a preexisting nonconforming use. Consequently, the defendant had to procure a variance or special exception before building the apart-

ments. He elected to petition for a variance. A variance will be granted when special conditions create a situation in which the strict enforcement of a zoning ordinance will result in unnecessary hardship for a property owner. RSA 31:72 III; *accord, Burr v. Keene,* 105 N.H. 228, 230, 196 A.2d 63, 65 (1963). The leading case of *Gelinas v. Portsmouth,* 97 N.H. 248, 85 A.2d 896 (1952), details the standard for granting a variance:

> (1) no diminution in value of surrounding properties would be suffered; (2) granting the permit would be of benefit to the public interest; (3) denial of the permit would result in unnecessary hardship to the owner seeking it; (4) by granting the permit substantial justice will be done; (5) the use must not be contrary to the spirit of the ordinance.

*Id.* at 250, 85 A.2d at 898. A variance to construct an apartment house in a town in which no apartments at all are permitted would indeed seem "contrary to the spirit of the ordinance." However, we need not decide that question because we hold that, although the master's report is not free from doubt, the board of adjustment did not grant a variance to build an apartment house.

In his report, the master states that "the zoning board exceeded its rights in granting . . . a variance for . . . an apartment house." By isolating this sentence, the defendant asks us to conclude that because the town did not except to this "finding" and did not appeal the original granting of the variance, it is estopped to argue that the variance authorizes the construction of apartments. But this argument reads the sentence out of context. A master's report must be read as a whole. That sentence is contained in general discussion; it is not part of the findings made in the penultimate paragraph of the report. Moreover, the defendant did not request a finding that the board had granted a variance to construct apartments. He requested, and the master granted, a finding that the variance was to construct "housekeeping units." The equation of that term with apartments is not properly a matter for judicial notice. *See generally* 29 Am. Jur. 2d *Evidence* §§ 14, 22–26 (1967). And in fact, such an identity was not made below. We disagree with the defendant that the plans shown the board necessarily denoted apartments. They have an apartment-like structure, but are equally suitable for seasonal rentals to vacationers. Nothing in the ordinance forbids their use in winter or any other

season, so long as the period of occupancy does not exceed four months. Rye, New Hampshire Zoning Ordinance § 15(G) (1969).

The defendant's principal requests for findings were directed toward establishing a prior inconsistent use. Had he done so, a variance would still have been necessary to avoid the area specifications of the ordinance, *id.* § 15(B), but would not have been material to his ability to use the property for apartments. *E.g., New London v. Leskiewicz,* 110 N.H. 462, 466, 272 A.2d 856, 859–60 (1970). Those requests were denied, and the corresponding exceptions abandoned here.

Finally, the tenor of the report impedes the defendant's efforts to isolate that one sentence from the body of the report. Most of the report seems to be directed toward showing that no variance for apartments was granted. This is supported by the record. Mrs. Holway's testimony that she asked of, and received from, the defendant guarantees that the buildings would not be used as apartments was not contradicted. Even if we ignored this evidence, the minutes of the second hearing show an understanding during the discussion that a clear differentiation was being made between apartments and housekeeping units. The variance was approved immediately thereafter. It does not stretch human credulity to assume that, with the explicit language of the ordinance forbidding apartments, the board relied on this distinction in approving the variance.

██ Because the variance did not authorize the construction of apartments, the selectmen had no cause to appeal the board's decision. Consequently, their failure to appeal at that time does not bar their petition for an injunction. The defendant, however, claims an independent, equitable reason for estoppel—that the town, knowing of the defendant's reasonable good faith reliance on the variance as authorizing apartments, allowed him to proceed to his detriment with the construction. But the evidence is clear that the board could not possibly have known, or had constructive knowledge, of a violation of the ordinance before October 1972, four months after rentals commenced. Between then and April 1973, when the prosecution began, the defendant did not change his position to his detriment. Thus throughout the time span of this case, a traditional element of equitable estoppel has been lacking. *See* 28 Am. Jur. 2d *Estoppel and Waiver* § 35 (1966); 31 C.J.S. *Estoppel* § 67 (1964).

Consequently, we affirm the decision below in all its aspects without considering the question 'whether estoppel against governmental entities requires anything more or different than traditional equitable considerations. *See generally Rye Beach Village Dist. v. Beaudoin*, 114 N.H. 1, 6–7, 315 A.2d 181, 184 (1974); *Monadnock School District v. Fitzwilliam*, 105 N.H. 487, 203 A.2d 46 (1964). We note in passing that the injunction will only require the defendant to restrict his rentals to those allowed by the ordinance.

*Decree affirmed.*

All concurred.