Gerard BEGIN et al.

v.

**INHABITANTS OF the TOWN OF SABATTUS et al.**

Supreme Judicial Court of Maine.

Dec. 28, 1979.

Isaacson, Isaacson & Hark, by Robert S. Hark, Lewiston (orally), for plaintiffs.

Orestis & Garcia, P. A., by Frederick H. Greene, III (orally), John Orestis, Lewiston, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

This is an appeal from an order of the Superior Court entering judgment for the defendants on both counts of a two-count complaint. The first count alleged the illegality under state law and under several constitutional principles of that portion of the "*Mobile Home Park Ordinance of the Town of Sabattus*" which limited to four the number of construction permits which could be issued each year per park developer and per mobile home park. That count demanded a judgment requiring the issuance of the permit applied for. The second count realleged the illegality of the ordinance and requested that the Court preliminarily and permanently enjoin the defendants from enforcing the provisions of the ordinance on which the denial of the permits was premised. Although plaintiff allegedly presents eleven issues for review, those fully briefed and argued on appeal can be summarized as follows:

(1) As a preliminary matter, what was the basis of the Superior Court's decision and what issues are properly before this court for review?

(2) Did the Town of Sabattus have authority to promulgate the ordinance in question?

(3) Is the ordinance unconstitutional as a violation of the equal protection clauses of the Constitutions of the State of Maine and of the United States?

(4) Is the ordinance unconstitutional as a violation of the due process clauses of the Constitutions of the State of Maine and of the United States?

We sustain the appeal.

The arguments of the parties evidence considerable confusion as to the basis of the Superior Court's opinion. For example, defendant contends that by announcing judgment for the defendant on Count I of the complaint, the Justice below necessarily found the ordinance constitutional. This is not so. All that judgment indicates is that the Court was denying plaintiff's request that the defendant Town be ordered to issue him a permit. Upon careful analysis it is clear that the Court never reached the legal questions of the validity of the Mobile Home Park Ordinance, because it found plaintiff estopped to raise those issues. The Court found, *inter alia* that:

> *Plaintiff in making application agreed to be bound by and comply with the pertinent ordinances, regulations and statutes as they appeared to apply to his proposed mobile home park . . . .*
>
> *He was granted permission, with conditions and restrictions . . . .*
>
> *He now says they are onerous and costly . . . as well as unconstitutional*
> . . . .
>
> *He could have taken appropriate legal steps at the beginning to determine the correctness or incorrectness of the ordinances and regulations . . . .*

The Court cited no authority for this application of the principle of estoppel; but it is one for which ample authority exists.

The principle is concisely stated at 16 Am. Jur. § 135: *"It is well settled that one who voluntarily proceeds under a statute and claims benefits thereby conferred will not be heard to question its constitutionality in order to avoid its burdens."* We find that it was error of law for the Justice to apply that principle in the circumstances of this case, for the reasons set forth below.

■ First, we note that this principle, as stated, applies only to challenges to the constitutionality of the statute, and not to challenges to its invalidity for other reasons. In this case, plaintiff also alleged that the ordinance was illegal because not authorized under Maine Home Rule powers granted by 30 M.R.S.A. § 1917. In order to find plaintiff estopped to present that claim, the Superior Court could not have relied on the above-quoted principle, but must have relied on the broader doctrine of *"equitable estoppel"* or *"estoppel in pais"* from which it was derived. *See Ball v. Jones*, 272 Ala. 305, 132 So.2d 120 (1961). One authority suggests that, in the context of estoppel to raise the illegality of a statute for constitutional or other reasons, the doctrine is more precisely termed *"quasi estoppel"* which includes the doctrine of *"election"*: *"the principle which precludes a party from asserting to another's disadvantage a right inconsistent with a position previously asserted by him."* 28 Am.Jur.2d § 29. As an equitable doctrine, therefore, its purpose is to further the ends of justice. As such, its invocation must depend on the circumstances of the individual case.

■ We now determine that equity is not furthered by estopping a party to challenge a municipal ordinance as void because unauthorized by the home rule powers, simply because that party has previously, or even in the same proceeding, complied with or proceeded under that statute. This position is consistent with the position in our liberalized rules of pleading under Rule 8, M.R.Civ.P. which provides in subsection (a)(2) that: " . . . [r]*elief in the alternative or of several different types may be demanded"*, and in subsection (e)(2) " . . . [a] *party may also state as many*

separate claims or defenses as he has regardless of consistency and whether based on legal or on equitable grounds or on both. . . . " More importantly, there is a strong public policy interest in avoiding the promulgation, implementation, and enforcement of ordinances by a municipality, which assume powers it is not authorized to exercise. A municipality which exercises unauthorized power works an inequity on its citizens and should not be allowed to estop a non-frivolous challenge to an ordinance made on the ground of lack of authority. This interest overrides any inequity in allowing one who has arguably received some benefit from the municipality under that statute from subsequently challenging it. Therefore, the Justice below erred in not considering on its merits plaintiff's challenge to the municipal ordinance in question on the grounds that the Town of Sabattus lacked the authority to promulgate it.

With respect to the constitutional questions raised, the principle of estoppel was refined into the principle applied and articulated by the United States Supreme Court in *United States Fuel Gas Co. v. Railroad Commission*, 278 U.S. 300, 307–308, 49 S.Ct. 150, 152, 73 L.Ed. 390, 395 (1929):

> It is the rule of this Court, consistently applied, that one who has invoked action by state courts or authorities under state statutes may not later, when dissatisfied with the result, assail their action on the theory that the statutes under which the action was taken offend against the Constitution of the United States. [citations omitted]

That decision applied the same principle to challenges in the federal courts to state statutes as unconstitutional under state constitutions. The rule was apparently meant to settle the equity question in favor of estoppel in all situations to which it applied. It is adhered to by most state courts as well.

There are, however, numerous exceptions to the general rule. For example, if compliance with the statute under attack was under compulsion, e. g., "under pressure of severe statutory penalties or to avoid disastrous effects to business", then the compliance is deemed "involuntary" and one will not be estopped to challenge it in subsequent proceedings. *People v. Arthur Morgan Trucking Co.*, 16 Ill.2d 313, 157 N.E.2d 41, 43 (1959). *See, e. g., Donoho v. O'Connell's, Inc.*, 18 Ill.2d 432, 164 N.E.2d 52 (1960); *Hialeah Race Course, Inc. v. Gulfstream Park Racing Association, Inc.*, 245 So.2d 625 (Fla.1971). Another exception generally applied is that "*an estoppel by acceptance of benefits does not preclude an attack upon a separable portion of the statute, although one of the conditions attached to the benefits conferred is thereby avoided.*" 16 Am.Jur.2d § 136. *E. g., State ex rel. Johnson v. Consumers Public Power District*, 143 Neb. 753, 10 N.W.2d 784 (1943); *Terry v. Thornton*, 207 Ark. 1019, 183 S.W.2d 787 (1944). Similarly, an attack not upon the whole statute, but upon the constitutionality of the statute as applied, may be determined in the same action in which one takes an appeal under that statute. *Vartelas v. Water Resources Commission*, 146 Conn. 650, 153 A.2d 822 (1959). There are also some variations on these exceptions specifically applicable to constitutional challenges to licensing and permit legislation. *See generally*, 65 A.L.R.2d 660.

In addition to frequently invoking these exceptions, courts have otherwise avoided application of the general rule, such that the validity of the principle has been generally questioned in recent years. In some cases courts have simply returned to the underlying concept of the rule, balanced the equities in the individual case, and come down in favor of reaching the constitutional issue. For example, in *Ruth v. Industrial Commission*, 107 Ariz. 572, 490 P.2d 828, 830 (1971) the Supreme Court of Arizona reasoned:

> This [estoppel principle], *however, is not a rule requiring unconditional adherence. The court undoubtedly has the power to decide the case under these circumstances and will exercise that power where considered appropriate.*

In *Surmeli v. State*, 412 F.Supp. 394 (S.D. N.Y., 1976) *aff'd mem.*, 2 Cir., 556 F.2d 560,

cert. den. 436 U.S. 903, 98 S.Ct. 2230, 56 L.Ed.2d 400 (1978), the District Court questioned the principle of estoppel to raise constitutional questions. In that case, a group of alien physicians, who had obtained licenses to practice medicine only upon filing declarations of intent to become citizens within ten years and who were in imminent danger of losing those licenses, brought a declaratory judgment action challenging the constitutionality of the provision providing for relocation upon failure to become a citizen. The defendant State contended that having enjoyed the benefits of the license the plaintiffs were estopped to raise the constitutional questions. The Court rejected that claim noting:

> [t]*his doctrine of estoppel is a slender reed for defendants to rely on in their attempt to foreclose plaintiff's attack. As the Supreme Court observed recently :* "[t]his doctrine has unquestionably been applied unevenly in the past, and observed as often as not in the breach." *Arnett v. Kennedy,* 416 U.S. 134, 153, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15, 33 (1975).

*Id.* at 396.

The Federal District Court for the Western District of Kentucky, in a case involving a challenge to the constitutionality of legislation terminating certain striking and picketing activity, dismissed the plaintiff's claims of estoppel in an even more summary manner.

> *The Court is not impressed with the authorities relied upon by plaintiff in support of its argument that, by acceptance of the monetary benefits of S.J.R. 190, the defendants waived their objections to it and are now estopped to challenge the constitutionality of this Act. In fact, when one believes seriously that rights accorded to him by law have been or are being violated, the proper forum in an orderly society for the vindication and protection of such rights is the courts. This Court is not disposed to effectively preclude the defendants from presenting their position in such forum. The Court*

> *concludes that an estoppel is not operable against the defendants as to their right to attack by litigation [sic] the constitutionality of S.J.R. 190.*

*Louisville and Nashville Railroad Co. v. Bass,* 328 F.Supp. 732 (W.D.Ky.1971).

Finally, the Court of Appeals of the State of New York, rejected the rule outright in *Kovarsky v. Housing & Developing Administration of City of New York,* 31 N.Y.2d 184, 335 N.Y.S.2d 383, 286 N.E.2d 882 (1972). That Court had formerly applied the rule only in a procedural sense, that is, holding that one could not in the *same proceeding,* both rely on a statute and challenge its constitutionality. Rather, one was required to bring a separate declaratory judgment proceeding. *E. g., Matter of Diocese of Rochester v. Planning Board,* 1 N.Y.2d 508, 154 N.Y.S.2d 849, 136 N.E.2d 827 (1956). In *Kovarsky,* the Court reasoned that New York liberalized rules of pleading which allowed that "[r]*elief in the alternative or of several different types may be demanded*", N.Y. CPLR 3017(a) rendered this rule obsolete.

These cases seem to represent a shifting view of the proper balance of the equities, such that estoppel will infrequently be found to operate against one asserting his or her constitutional rights. It is worth noting that in three of the four cases discussed above, the entity asserting estoppel was the State, or a state commission, seeking to prevent challenges to its regulations by those regulated.

■ This Court has infrequently invoked the principle of estoppel. In fact, the most recent case decided squarely on that ground was *Snelson v. Culton,* 141 Me. 242, 42 A.2d 505 (1945).[1] The case at bar is readily distinguishable from *Snelson.* There, the Court noted that the provision challenged "is an integral and all-affecting part of Section 20, Chap. 21, R.S.1930, as amended, without which we are convinced that law would never have been passed." *Id.* at 507. Here, we have no doubt that the Town of

---

1. Some of the analysis in *State v. Van Reenan,* Me., 355 A.2d 392 (1976) was in the terms

suggestive of a reliance on the estoppel principle.

Sabattus would still have passed a Mobile Home Park or other subdivision ordinance, even without the challenged provision limiting to four the number of permits which could be granted. The authority to do so was specifically granted by 30 M.R.S.A. § 4956(2)(B), and the other provisions of the ordinance relating to size of lot, roadways, sewage disposal, etc., were clearly important considerations in its passage. The *"Mobile Home Park Ordinance of the Town of Sabattus"* also contains a *"Saving Clause"*, Section XII(2) which provides:

> *if any section, sub-section, paragraph, sentence, clause, or phrase of this ordinance should be declared invalid for any reason whatsoever, such division shall not affect the remaining portions of this ordinance, which shall remain in full force and effect, and to this end the provisions of this ordinance are hereby declared to be severable.*

Such provision is an indication that no one portion of the ordinance is so *"central"* as the provision in question in *Snelson, supra,* was deemed to be.

The challenge to the provision of the ordinance in this case clearly falls within that recognized exception to the principle of estoppel which allows an attack on a separable provision of the statute. In fact, this principle was applied by the Supreme Court of Wisconsin in a situation very similar to the case at bar. *Town of Yorkville v. Fonk,* 274 Wis. 153, 79 N.W.2d 666 (1956). In that case the Town brought an action for forfeiture of a trailer camp license for violation of a provision of the license limiting to 25 the number of trailers which could be located in any licensed trailer camp at one time. The trial court found the licensees estopped to challenge the constitutionality of the ordinance or any portion thereof because they had applied for and obtained a license thereunder. The Supreme Court noted the existence of a *"saving clause"* and proceeded to apply the *"separate or independent provision"* exception to the general rule of estoppel, holding that the trial Court had erred in failing to reach the merits of the appeal.

■ We likewise hold that it was error for the Superior Court to apply the principle of estoppel in the case at bar, and hold that it should have considered the constitutional questions. Although we find one of the traditional exceptions to the rule applicable here, we support the modern trend urging courts to be circumspect in applying the estoppel principle. This is particularly so when the State, a regulatory agency, or a municipal subdivision, is seeking to estop one of its licenses or licensee applicants from challenging the constitutionality of the provisions affecting his or her conduct.

Since the legal and constitutional questions were before the Superior Court and were fully briefed and argued on this appeal, we now turn to the merits of the case. We first take up the question of the authority of the Town of Sabattus to promulgate the provision of the ordinance in question under the Home Rule powers.

Maine has granted to its municipalities very broad Home Rule powers. 30 M.R.S.A. § 1917 provides, *inter alia*:

> *Any municipality may, by the adoption, amendment or repeal of ordinances or bylaws, exercise any power or function which the Legislature has [the] power to confer upon it, which is not denied either expressly or by clear implication, and exercise any power or function granted to the municipality by the Constitution, general law or charter.*

If the municipalities had a power specifically *"granted"* by general law to promulgate a growth-limiting ordinance, it was to be found in 30 M.R.S.A. § 4956. That section provides for municipal review and regulation of land subdivisions, the definition of which is broad enough to cover the mobile home park development in question. In subsection 3 it sets forth *"Guidelines"* which the planning board or municipal officers *"shall consider . . . [w]hen promulgating any subdivision regulations and when reviewing any subdivision for approval."* By Pub.L. 1971, c. 454, one of these criteria (formerly 30 M.R.S.A. § 4956(3)(H)) *required* that a municipality determine that a subdivision *"will not place an unreason-*

able burden on the ability of the local governments to provide municipal or governmental, services." This section supplied apparent authority for the passage of certain types of *"slow-growth"* ordinances by municipalities. That subsection was repealed, however, by Pub.L. 1973, c. 465. Plaintiffs contend that by this repeal the Legislature *"by clear implication"* denied municipalities the power to pass regulations designed to control growth so that municipal services could keep pace.

■ We do not find the repeal of subsection (3)(H), without more, to have the import which plaintiff attributes to it. No legislative intention appears in the legislative history. Since prior to the repeal of the subsection the statute required municipal reviewing authorities to consider the impact on municipal services when promulgating subdivision regulations or approving subdivision proposals, it appears that the Legislature did not consider such considerations insignificant or impermissible. The repeal of the provision certainly means that consideration of this criterion is no longer *"mandatory"*, but it does not either necessarily or *"clearly"* imply that such consideration by a municipality is no longer allowed. Subsection (2) of § 4956 states generally that the

> municipal reviewing authority shall . . issue an order denying or granting approval of the proposed subdivision or granting approval upon such terms and conditions *as it may deem advisable to satisfy the criteria listed in subsection 3 and to satisfy any other regulations adopted by the reviewing authority, and to protect and preserve the public's health, safety, and general welfare.*
> (Emphasis added)

■ This authority coupled with the general Home Rule authority granted by 30 M.R.S.A. § 1917 is sufficient to permit municipalities to implement some slow-growth limitations. Plaintiffs have not met their burden of showing that the repeal of sub-

section (H), or any other action of the State Legislature, denies the Town of Sabattus the authority to adopt the ordinance in question, or to consider availability of municipal services in adopting ordinances, provided such considerations and ordinances are otherwise constitutional.

■ Plaintiffs have also argued, however, that the ordinance is unconstitutional both on its face, and as applied, as a denial of due process and equal protection.

We will examine the equal protection claim first. We will accept for purposes of this analysis that the purpose of the provision of the ordinance in question is to slow growth in order to provide sufficient municipal and governmental services to all residents of the Town of Sabattus; and that limiting building permits to four per subdivision or development is a permissible way to fulfill that purpose.

Plaintiffs argue that the Mobile Home Park Ordinance is unconstitutional on its face. They base this argument on the provision of the Mobile Home Park Ordinance which states: *"Any Mobile Home Park Developer shall be limited to 4 new Mobile Home Lots at the start and only 4 new Mobile Home Lots after the starting."* (Emphasis added) Plaintiffs then note that the companion ordinance, *"Minimum Lot Size and Building Code, Town of Sabattus"*, provides a limitation to four building permits per *development*. Thus, plaintiffs argue, a developer of structures other than mobile homes can get many more than four permits per year by dividing his land interests into many different developments,[2] while the mobile home park developer is entitled to a total of only four permits.

The Town argues that this is not necessarily a proper interpretation of the Mobile Home Park ordinance and that this Court should interpret the ordinance in a manner which preserves its constitutionality. Such an interpretation is possible in this case. The sentence which follows that relied on

2. We decline to speculate here on the extent to which such a procedure would be allowed by the Town under the Building Code Ordinance.

by the plaintiff states *"All existing Mobile Home Parks shall be limited to adding only 4 new Mobile Home lots per year."* (Emphasis added) The purpose of the first sentence was simply to distinguish new parks from old parks, and the former sentence should be interpreted to apply per developer *per new park,* and not to limit the number of new parks or the total number of permits which an individual Mobile Home Park Developer can obtain in one year.

Nevertheless, this provision of the ordinance must fall because when compared with the Building Code Provision, it unlawfully discriminates against mobile home development. In limiting mobile home parks to four permits per year, it limits these parks to four *new dwelling units* per year. On the other hand, a subdivision consisting of conventional buildings has no such limitation. Those buildings, e. g., apartment buildings, may contain any number of dwelling units without violating the Building Code Ordinance in question, so long as no more than four new buildings per year are constructed in any one development.

This is the obvious interpretation of the ordinances in question. It is clear from the record that this is the interpretation adopted by the Town of Sabattus. Joint Exhibits numbers *"1"* and *"2"* show that in one case four building permits have been issued by the Town of Sabattus for one development where each building is to contain four dwelling units for a total of sixteen units in one development. Even a new mobile home park, which is entitled under the ordinances to four *"starting"* permits in addition to the four permits allowed to an existing park, could never acquire more than eight new dwelling units per year.

The defendant Town acknowledges that the two ordinances under discussion are part of a *"two-ordinance scheme"* designed to, among other things, slow growth in the Town to allow for development of adequate school facilities, police and fire protection, and solid waste disposal. On the record before us in this case we can perceive no rational reason for classifying mobile homes differently from more conventional dwelling units for these reasons. If sixteen or more apartments in four buildings are allowable and only four (or eight) mobile homes, there is clearly potential for faster population growth, more congestion of people and traffic, and more strain on municipal and governmental services from conventional housing than from mobile homes. *Cf. Ace Tire Co., Inc. v. Municipal Officers,* Me., 302 A.2d 90 (1973).

Defendant's reliance on this Court's decision in *Wright v. Michaud,* 160 Me. 164, 200 A.2d 543 (1964), to support such a distinction is inapt. If one is concerned with aesthetics and the *"character"* of neighborhoods as part of a comprehensive zoning plan, there may be an acceptable rationale for distinguishing between conventional housing and mobile homes, but no such difference is apparent when the purpose of the legislation is slow growth. Even had aesthetic considerations been advanced as a purpose of this ordinance, they would be unavailing where, as here, there is no zoning limitation on where a mobile home park may be located in Sabattus. Mobile homes are not limited to parks; they may be installed on any lot.

Where, as here, the plaintiff has appropriately raised a claim of denial of equal protection and the ordinance on its face is prima facie violative of equal protection, it was the obligation of the Town to demonstrate on the record that there is indeed some rational basis for distinguishing between *"mobile homes"* and more conventional housing as they relate to population growth.

This Sabattus has not done.

We declare that portion of the Mobile Home Park Ordinance which limits the number of permits which may be granted per mobile home park or developer per year to be invalid on the ground that it is arbitrary and discriminatory and violates the equal protection clauses of Art. I, § 6-A of the Maine Constitution and the Fourteenth Amendment of the United States Constitution. Because we so hold, we need not reach the question of whether it is also unconstitutional under the due process

clauses of the Constitutions of the State of Maine and the United States. By so declaring, we do not intimate that the ordinance is invalid in regard to any of its other provisions. The paragraph stricken is separable from, and independent of, the remainder of the ordinance. The rest of the ordinance stands.

The entry is:

Appeal sustained.

Judgment of the Superior Court vacated.

Section III(1) of the *"Mobile Home Park Ordinance of the Town of Sabattus"* is declared invalid only insofar as it provides: *"Any Mobile Home Park Developer shall be limited to 4 new Mobile Home Lots at the start and only 4 new Mobile Home Lots after the starting. All existing Mobile Home Parks shall be limited to adding only 4 new Mobile Home lots per year."*

GLASSMAN, J., did not sit.