Merrimack
No. 83-019

# CITY OF CONCORD

### v.

# VICTOR TOMPKINS & *a.*

February 3, 1984

464

466

*Paul F. Cavanaugh*, city solicitor, of Concord, by brief and orally, for the plaintiff.

*I. Michael Winograd*, of Concord, by brief and orally, for the defendants.

KING, C.J. The question presented is whether the City of Concord (city) is estopped from prohibiting the defendants from erecting a

sign under the permit issued to Victor Tompkins. We hold that there is no governmental estoppel and affirm.

## I. *Facts.*

On December 1, 1978, the city filed a petition for declaratory judgment in Merrimack County Superior Court to determine whether the city could prohibit the defendants—Victor Tompkins, Tompkins Realty, Inc., and NE–OP–CO Sign Co., Inc. (NE–OP–CO)— from constructing a sign under the city's permit issued to Mr. Tompkins. Previously, on October 14, 1975, the Concord Building and Inspection Department had issued a permit to Mr. Tompkins to erect a sign on the roof of the Howard Johnson's Restaurant at 25 Water Street in Concord. Mr. Tompkins had not constructed a sign under the permit prior to commencement of the declaratory judgment proceeding by the plaintiff.

At the hearing on November 5, 1982, the city relied on the pleadings, including the admissions in the defendants' answer, to prove that construction of a sign, under the Concord Building Code, must begin within six months of the date a permit is issued. The city contended that if a sign is not erected within the six-month period, the permit would expire and a new permit would have to be obtained before any construction of the sign is begun.

The defendants argued that the city was estopped from applying the building code to prevent the sign's construction for three reasons. First, the city's sign permits do not contain a statement that the permit will be void if construction is not commenced within six months. Second, authorized city officials in the Concord Building and Inspection Department informed James B. Schadlick, Sr., of NE–OP–CO, that there was no time limit for construction of the sign. Third, other signs in the city had been constructed after the applicable six-month period for each sign permit had expired.

On November 23, 1982, the Superior Court (*Cann*, J.) approved the recommendation of the Master (*Thomas J. Pancoast*, Esq.) that a judgment issue declaring that no sign may be erected by the defendants under the Tompkins' permit. The defendants appeal, arguing that they met their burden of proving the elements of estoppel.

## II. *Elements of Estoppel.*

The party asserting estoppel bears the burden of proof. *Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. 438, 442, 388 A.2d 940, 942 (1978). There are four essential elements of estoppel: first, a representation or concealment of material facts made with knowledge of those facts; second, the party to whom the representation

was made must have been ignorant of the truth of the matter; third, the representation must have been made with the intention of inducing the other party to rely upon it; and fourth, the other party must have been induced to rely upon the representation to his or her injury. *See id.; Olszak v. Peerless Ins. Co.*, 119 N.H. 686, 690, 406 A.2d 711, 714 (1979); *Monadnock School District v. Fitzwilliam*, 105 N.H. 487, 488–89, 491, 203 A.2d 46, 48, 49–50 (1964).

The reliance by the party bringing the estoppel claim on the representation or concealment must have been reasonable. *See Rye Beach Village Dist. v. Beaudoin*, 114 N.H. 1, 7, 315 A.2d 181, 184 (1974). Reliance is unreasonable when the party asserting estoppel, at the time of his or her reliance or at the time of the representation or concealment, knew or should have known that the conduct or representation was either improper, materially incorrect or misleading. *See Olszak v. Peerless Ins. Co., supra* at 690–91, 406 A.2d at 715; *Town of Nottingham v. Lee Homes, Inc. supra; Storms v. U.S. Fidelity & Guar. Co.*, 118 N.H. 427, 432, 388 A.2d 578, 581 (1978); *Town of Rye v. McMahon*, 117 N.H. 857, 861, 379 A.2d 807, 810 (1977); *cf. Margolis v. Insurance Company*, 100 N.H. 303, 308, 125 A.2d 768, 772 (1956) (reliance on non-action is unreasonable when there is no duty to act or disclose by the non-actor). Each element of estoppel requires a factual determination. *Town of Nottingham v. Lee Homes, Inc., supra* at 443, 388 A.2d at 942–43. The master's resolution of these issues will be sustained if supported by evidence. *Id.*

III. *Estoppel Against the Government.*

A. *New Hampshire Law*

Municipal corporations, like natural persons, are subject to estoppel. *Gilbert v. Manchester*, 55 N.H. 298, 303 (1875). Governmental estoppel is appropriate when government officials are acting within their "prescribed sphere and functions," *Trustees &c. Academy v. Exeter*, 90 N.H. 472, 496, 27 A.2d 569, 586 (1940), and are "[e]xerting no excess of authority." *Id.* However, the State and its municipalities are not estopped by the unauthorized conduct or statements of their officials. *Smith v. Epping*, 69 N.H. 558, 560, 45 A. 415, 416 (1899). Thus, estoppel may be applied against the government, as a result of conduct or statements by government employees, provided that the government employees had the authority to act, and the party invoking governmental estoppel satisfies the elements of estoppel. *See Bigwood v. Merrimack Village District*, 108 N.H. 83, 87–88, 229 A.2d 341, 345 (1967).

The authority of a public official to act "'cannot be supplied by estoppel.'" *State v. Hutchins*, 79 N.H. 132, 140, 105 A. 519, 523 (1919) (citations omitted). The attempt to act by a government official, by itself, when ultra vires, does not remedy that official's lack of authority for estoppel purposes. *See id.*; *cf. Bergeron v. Savings Bank*, 63 N.H. 195, 196 (1884) (a party's attempt to contract does not remedy the lack of capacity to contract). Therefore, a party bringing an estoppel claim against the State or a municipality, based on the representations or conduct of a government official, cannot rely on the official's "asserted or assumed exercise of authority not possessed." *Storrs v. Manchester*, 88 N.H. 139, 142, 184 A. 862, 864 (1936). Nor can a party rely on the "apparent authority" of a government official, to establish an estoppel claim, when the official acted outside his actual authority. *Id.*; *Trustees &c. v. Exeter, supra* at 494, 27 A.2d at 586.

A party cannot assert an estoppel claim against the government merely because the government receives benefits from private parties who rely on the unauthorized representations of government officials. *Id.* at 496, 27 A.2d at 586. "The State, not having acted, has made no representation nor has it held out any promise. If it receives benefit in return for its agents' [ultra vires] promise, the benefit is not restorable." *Id.* But when the government "requests or retains and uses benefits," the government is estopped from later refusing to pay the fair worth of those benefits. *Marrone v. Town of Hampton*, 123 N.H. 729, 736, 466 A.2d 907, 910–11 (1983).

When the government accepts services performed by a government agent, acting within the scope of his authority, the government is estopped from later challenging the validity of the agent's employment contract. *See Lucier v. Manchester*, 80 N.H. 361, 363, 117 A. 286, 287 (1922) (acceptance of services of attorney by city amounted to ratification of the invalid employment contract).

Indeed, this court has held that the subsequent ratification by a municipality of the action of its officials is "equivalent to an original authority." *Amazeen v. New Castle*, 76 N.H. 250, 253, 81 A. 1079, 1081 (1911). Thus, a city council may ratify "any irregularities in the actions taken on behalf of the city which pertain to matters within the city's power to perform." *Green v. Shaw*, 116 N.H. 562, 565, 364 A.2d 1265, 1267 (1976). Accordingly, the State or a municipality can be estopped by the ratified conduct of government officials. The party asserting estoppel has the burden of establishing that the government ratified the conduct of the government official relied upon. *See Rich v. Errol*, 51 N.H. 350, 361 (1871).

██ ██ We have also held that a municipality's failure to enforce an ordinance does not constitute ratification of a policy of nonenforcement and, consequently, will not estop a municipality's subsequent enforcement of the ordinance. *See Rye Beach Village Dist. v. Beaudoin*, 114 N.H. at 6, 315 A.2d at 184. However, the government may be subject to estoppel for failure to enforce a regulation when "conscious intentional discrimination in enforcement is alleged." *Weare v. Stone*, 114 N.H. 80, 82, 314 A.2d 638, 639 (1974).

██ ██ When no government official with authority to bind the government exists, the party asserting estoppel cannot rely on the "silence" or inaction of government officials to later estop the government when it does take enforcement action. *State v. Hutchins*, 79 N.H. at 140, 105 A. at 523. Silence of government officials does not constitute governmental ratification and will not provide a basis for estoppel. *See id.* Therefore, a party bringing a governmental estoppel claim "cannot treat want of objection [by government officials] as a basis for an inference of consent because of silence." *Id.*

██ The genesis of this court's historical reluctance to apply estoppel against the government, when private parties rely to their detriment on the unauthorized conduct of public officials, is reflected in Mr. Justice Holmes' admonition that "[m]en must turn square corners when they deal with the Government." *Rock Island &c. R. R. v. United States*, 254 U.S. 141, 143 (1920). We have long recognized that all private parties dealing with government officials are charged with "notice of the extent and limits of their authority." *Richards v. Columbia*, 55 N.H. 96, 99 (1874); *see Great Falls Bank v. Farmington*, 41 N.H. 32, 44 (1860).

██ ██ A party who relies on the representations of a government official is at risk that the official acted ultra vires. *See Smith v. Epping*, 69 N.H. at 560.

> "'It is a general and fundamental principle of law that all persons contracting with a municipal corporation must, *at their peril, inquire into the power* of the corporation or its officers to make the contract. . . . So, also, those *dealing with the agent of a municipal corporation* are likewise bound to ascertain the nature and extent of his authority. . . . The fact . . . that the agent made false representations in relation to his authority and what he had already done will not aid those who trusted to such representations to establish a liability on the part of his corporate principal.'"

*Id.* (citation omitted). Therefore, the party who relied upon the government official's unauthorized conduct or statements cannot be deemed to have been injured by the government. *See id.*

### B. *Recent Trends*

■ The traditional New Hampshire rule of applying estoppel against the government only when a government official, acting within the scope of his or her authority, has induced reasonable detrimental reliance by a private party, emerged from the historical policy of this court that all citizens, when dealing with government officials, are on notice of the limits of the officials' authority.

Recent court decisions in other jurisdictions have demonstrated a changing attitude toward the application of governmental estoppel. These courts have applied governmental estoppel with frequency, even when the estoppel is created by the unauthorized conduct or statements of government officials. Many courts have come to heed Mr. Justice Jackson's gloss on Mr. Justice Holmes' admonition that "there is no reason why square corners should constitute a one-way street" when citizens deal with government officials. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 387–88 (1947).

In *Begin v. Inhabitants of Town of Sabattus*, 409 A.2d 1269 (Me. 1979), the Supreme Judicial Court of Maine held that a citizen who receives a benefit from a municipality under an ordinance is not estopped from subsequently attacking the validity of the ordinance, on the ground that the municipality lacked the authority to promulgate it. "[E]quity is not furthered by estopping a party to challenge a municipal ordinance as void because unauthorized . . . simply because the party has previously, or even in the same proceeding, complied with or proceeded under that statute." *Id.* at 1271. The court, after reaffirming the "strong public interest" in preventing a municipality from exercising powers outside its delegated authority, *id.* at 1272, reasoned that

> "[a] municipality which exercises unauthorized power works an inequity on its citizens and should not be allowed to estop a non-frivolous challenge to an ordinance made on the ground of lack of authority. This interest overrides any inequity in allowing one who has arguably received some benefit from the municipality under that statute from subsequently challenging it."

*Id.*

In a case on governmental estoppel, the Ninth Circuit in *Brandt v. Hickel*, 427 F.2d 53 (9th Cir. 1970), applied estoppel against the federal government even though the representation relied upon by the

party asserting estoppel was conceded to be unauthorized "by statute, regulation or decision." *Id.* at 57. The Ninth Circuit explained that

> "[n]ot every form of official misinformation will be considered sufficient to estop the government [citation omitted]. . . . Yet some forms of erroneous advice are so closely connected to the basic fairness of the administrative decision making process that the government may be estopped from disavowing the misstatement."

*Id.* at 56; *see also Appeal of John Denman,* 120 N.H. 568, 573, 419 A.2d 1084, 1088 (1980) (good faith reliance on misinformation from State tax examiner can support an estoppel claim against the government).

In considering the imposition of estoppel against the government, courts have employed an equity balancing test, weighing the public interest in preventing the government from capriciously dealing with its citizens, against the risk, posed by estoppel, of undermining important governmental interests. *See Portmann v. United States,* 674 F.2d 1155, 1167 (7th Cir. 1982); *Oil Shale Corporation v. Morton,* 370 F. Supp. 108, 126–27 (D. Colo. 1973). *Cf. United States v. Stauffer Chemical Co.,* 104 S. Ct. 572, 580 (1984) (government is not entitled to a special exception from the doctrine of collateral estoppel because of its unique role of litigating recurring issues of public importance). The Ninth Circuit has applied governmental estoppel when the government official's "wrongful conduct threatens to work a serious injustice and if the public's interest would not be unduly damaged by the imposition of estoppel." *United States v. Lazy FC Ranch,* 481 F.2d 985, 989 (9th Cir. 1973); *see California Pacific Bank v. Small Business Administration,* 557 F.2d 218, 224 (9th Cir. 1977) (governmental estoppel should be available "where justice and fair play require it").

Several federal circuit courts have held that a finding of "affirmative misconduct" on the part of a government official will entitle a person to invoke estoppel against the government, provided that the threshold elements of estoppel are met. *Community Health Services, Etc. v. Califano,* 698 F.2d 615, 621 (3d Cir. 1983). Affirmative misconduct has been alternatively defined by the circuits as "something more than mere negligence," *TRW, Inc. v. F.T.C.,* 647 F.2d 942, 951 (9th Cir. 1981), "a crucial misstatement in an official decision," *Brandt v. Hickel, supra* at 57, an "official statement of the law later determined to be invalid," *Free Enterprise Canoe Renters Ass'n v. Watt,* 711 F.2d 852, 857 (8th Cir. 1983), and an "official's

noncompliance with an affirmatively required procedure," *Corniel-Rodriguez v. I.N.S.*, 532 F.2d 301, 306–07 (2d Cir. 1976).

 Recent court decisions have applied governmental estoppel in only those circumstances where the party asserting estoppel has relied, to his or her detriment, in good faith and reasonably, upon the governmental conduct or representation alleged. Reliance may be deemed unreasonable when the party alleging estoppel could have discovered the truth of the matter by visiting a local government office, *United States v. Consolidated Mines & Smelting Co. Ltd.*, 455 F.2d 432, 447 (9th Cir. 1971), or when the relevant regulations were published in the Federal Register, *Federal Crop Ins. Corp. v. Merrill, supra* at 384–85.

 However, courts have also recognized that the trier of fact should be wary of imputing notice of the legal limitations upon government officials to persons who are inexperienced in the affairs of government. *See Byrne Organization, Inc. v. United States*, 287 F.2d 582, 587 (Ct. Cl. 1961); *Gay St. Corp. v. United States*, 127 F. Supp. 585, 589 (Ct. Cl. 1955). Therefore, the Ninth Circuit stated that reliance is reasonable when "a person sincerely desirous of obeying the law would have accepted the information [relied upon] as true, and would not have been put on notice to make further inquiries." *United States v. Lansing*, 424 F.2d 225, 227 (9th Cir. 1970).

IV. *Conclusion.*

 In this case, however, it is unnecessary to depart from the existing New Hampshire case law. We conclude that the master in this case had a reasonable basis for ruling that the defendants did not satisfy their burden of proving the elements of estoppel. *See Hynes v. Whitehouse*, 120 N.H. 417, 421, 415 A.2d 876, 878 (1980); *Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. at 442, 388 A.2d at 942.

First, there is evidence indicating that material facts relating to the limited duration of the sign permit issued Mr. Tompkins were not concealed. Mr. Tompkins' permit expressly provides that it can be revoked at any time by the city. The permit also declares that the sign must meet "the minimum standards of Article XVI of the National Building Code which is adopted by reference by the City of Concord Building Code." *See* Concord Building Code § 26.71A.

It is also a matter of public record that the Concord Building Code adopted the National Building Code (Section II) definition of a sign as a structure. *See id.* at § 26.45. By equating a sign with a structure, the city thereby extended the requirements of section 26.21 of

the Concord Building Code to signs. Section 26.21 provides that "a permit under which no work is commenced within six months after issuance shall expire by limitation and a new permit shall be secured before work is started." A reasonable reading of the Concord Building Code would not have induced Mr. Tompkins to believe that there was no time limit for construction of the sign. *See Appeal of John Denman, supra* at 573, 419 A.2d at 1088 (1980).

Second, the record reveals evidence supporting the master's finding that Mr. Tompkins did not rely on the representations made by the city's authorized building inspectors to Mr. Schadlick, of NE–OP–CO, that there was no deadline for constructing the sign. The master found, based on Mr. Tompkins' testimony, that the reason Mr. Tompkins did not begin construction of the sign within the six-month period was "because money was tight." *Cf. Appeal of Denman supra* (where this court found that equity supported the plaintiffs' estoppel argument because they "did exactly" as the State tax examiner "instructed them"). The master also found that Tompkins "assumed there was no time limitation."

Third, the evidence is consistent with the master's conclusion that "[t]here was no evidence that he [Mr. Tompkins] or Tompkins Realty, Inc. relied upon the [past] pattern and practice of conduct and behavior of the plaintiff with which Mr. Schadlick had become familiar." Mr. Tompkins never testified that Mr. Schadlick informed him, either directly or indirectly, of prior city practice allowing other signs to be constructed after the six-month period had elapsed.

*Affirmed.*

DOUGLAS, J., did not sit; the others concurred.