Hillsborough
No. 83-107

THE STATE OF NEW HAMPSHIRE

v.

MARY CHARPENTIER

February 13, 1985

58

*Gregory H. Smith,* attorney general (*George Dana Bisbee,* assistant attorney general, on the brief and orally), for the State.

*Kearns, Colliander, Donahue & Tucker P.A.,* of Exeter (*David S. Brown* on the brief and orally), for the defendant.

KING, C.J. This case involves the liability of a landowner, Mary Charpentier, for the cost of cleaning a hazardous waste dump located on her property in Nashua. The State sued Mrs. Charpentier, William Sylvester, John D. Tinkham, Chem-Waste, Inc. and Cannons Engineering Corporation, for the cost of eliminating the dump. After a jury trial, the Superior Court (*Flynn,* J.) entered a verdict for $1,135,700 against the defendant, Mary Charpentier, representing 10% of the total verdict against all five defendants. Mary Charpentier appeals the trial court's verdict, and we affirm.

The facts in this case reveal the ongoing operation of a hazardous waste dump, as well as repeated attempts by the State to abate this public nuisance. The property containing the dump is owned by Mrs. Charpentier and located on Gilson Road in Nashua. Mrs. Charpentier acquired the property in 1965, and in 1969 she allowed her son-in-law, William Sylvester, to occupy a house located on the property. During the early 1970's, Sylvester operated a business on the premises which excavated and sold gravel from the property. Following the depletion of the gravel supply, Sylvester used the property as a disposal site for refuse and demolition debris.

In 1975, the State filed suit against Sylvester and Mrs. Charpentier to enjoin further dumping of refuse on the Gilson Road dump site. That suit was concluded by a consent decree in 1976 in which Mrs. Charpentier agreed to use her "best efforts" to cause Sylvester and others to stop dumping refuse and to remove the waste from the property. In several subsequent contempt proceedings, Sylvester was found in contempt of the consent decree; however, Mrs. Charpentier was never found in contempt.

In 1978 and 1979, Sylvester disposed of hundreds of barrels of hazardous chemical wastes on the property. From January until October of 1979, Sylvester arranged with others to have thousands of gallons of liquid chemical wastes disposed of through a buried

drain located inside a commercial garage on the premises. The present action was brought by the State in February 1980 to recover damages for the cost of cleaning up the Gilson Road dump site, which now contains large quantities of hazardous chemical wastes.

Mrs. Charpentier appeals the jury verdict against her and argues that the State is barred from instituting the present suit for damages by the prior suit to enjoin the dumping and to compel the removal of waste. Mrs. Charpentier claims that the 1976 consent decree in the injunctive action operates as res judicata, collateral estoppel, equitable estoppel and waiver by the State with respect to the present suit for damages. Further, Mrs. Charpentier asserts that the trial court erred in its denial of her motions to direct a verdict in her favor and to set aside the verdict.

Four of Mrs. Charpentier's arguments rely upon the consent decree signed on September 29, 1976, in settlement of a suit filed by the division of public health services. The division sued in 1975 to compel the defendants, Sylvester and Mrs. Charpentier, to remove all debris and industrial waste from the premises on Gilson Road. The decree reads in part: "In the event that the removal requirements . . . of this order are not complied with, and it is found that defendant Mary Charpentier has used her best efforts to secure compliance by defendant Sylvester or by other means available to her, she shall not be found in contempt as a result of said non-compliance."

In 1976 when the consent decree was signed there were no chemical wastes present on the site and the State had not expended any money on cleaning the site. The consent decree provided that both defendants, Sylvester and Mrs. Charpentier, were to remove all refuse until "[t]he premises . . . contains nothing other than naturally-occurring substrate material." Failure to remove the refuse was punishable by contempt. Mrs. Charpentier argues that the State was holding defendant Sylvester solely responsible for creating the nuisance in 1976 and would absolve her of liability so long as she was not found in contempt.

Since she has not been found in contempt of the 1976 consent decree, Mrs. Charpentier claims that res judicata and collateral estoppel prevent the present action for damages. "Considerations of judicial economy and a policy of finality in our legal system have resulted in the development of the doctrines of res judicata and collateral estoppel to avoid repetitive litigation." *Scheele v. Village District*, 122 N.H. 1015, 1019, 453 A.2d 1281, 1284 (1982).

■■ "Current usage gives the term res judicata a broad meaning covering all the various ways in which a judgment in one action

will have a binding effect in another." *Bricker v. Crane*, 118 N.H. 249, 252, 387 A.2d 321, 323 (1978). Res judicata requires that a final judgment on the merits in one suit absolutely bars a subsequent suit involving the same parties as:

> "to all matters which were litigated, or might have been litigated, in the first suit, absent some extenuating circumstances . . . . Collateral estoppel, which is an extension of the doctrine of res judicata, bars the same parties . . . from contesting in a subsequent proceeding on a different cause of action any question or fact actually litigated and determined against them in a prior suit."

*Id.* at 253, 387 A.2d at 323 (citations omitted).

 This court has recognized that a consent judgment may operate as res judicata; however, for res judicata to operate, the matters in issue in subsequent actions must be identical to the issues determined by the prior consent judgment. *Concrete Constructors, Inc. v. The Manchester Bank*, 117 N.H. 670, 672, 377 A.2d 612, 614 (1977). Mrs. Charpentier, as the party asserting an affirmative defense of res judicata or collateral estoppel, bears the burden of proof as to the identity of issues and the finality of their determination. *Strobel v. Strobel*, 123 N.H. 363, 365–66, 461 A.2d 558, 559 (1983).

The issues resolved in the consent decree involved only the State's 1975 petition for injunctive relief to prevent further use of the dump and to compel removal of all debris. The 1975 injunctive action dealt with the conditions at the site prior to any dumping of hazardous chemical wastes and did not consider the costs of cleaning up the site. Further, the consent decree stated that the conduct prescribed for Mrs. Charpentier in order to avoid contempt was the use of her "best efforts."

The issues litigated in the present suit for damages brought against Mrs. Charpentier as the owner of property on which a third party has created a nuisance were: (1) whether Mrs. Charpentier knew or had reason to know that hazardous wastes on her property caused or had an unreasonable risk of causing a nuisance; and (2) whether Mrs. Charpentier consented to the dumping of hazardous wastes or failed to use reasonable care to prevent the nuisance. *See* RESTATEMENT (SECOND) OF TORTS §§ 838, 839 (1979).

██ The nuisance condition existing in 1976 involved only construction debris, while the State's action for damages in 1980 was

based upon the existence of hazardous chemical wastes on the dump site and the necessary removal of wastes undertaken by the State. Since the issues to be proved were different in the earlier injunctive action than they are in the present damages suit, and since the facts have changed substantially, the consent decree in the prior equity action does not bar this suit at law for the recovery of the costs of cleaning the site. *See Lineham v. So. N.E. Prod. Credit Assoc.*, 122 N.H. 179, 182–83, 442 A.2d 585, 588 (1982). Further, even if the issues were identical, relitigation would be warranted in the present action because the "potential adverse impact . . . on the public interest" is so much greater, now that hazardous chemical wastes exist on the site, than it was when they did not exist in 1976. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 28(5) (1982).

██ At oral argument Mrs. Charpentier claimed that the failure to adjudicate her in contempt of the consent decree barred the present action. As we have already discussed, the issues and facts have changed in the present suit. Even if the issues were the same, however, neither res judicata nor collateral estoppel would act as a bar to the present damages suit, because the State bore a heavier burden of proof in the earlier contempt proceeding in which it failed to find Mrs. Charpentier in contempt beyond a reasonable doubt, than it did in the present civil damages suit, where liability was based upon a preponderance of the evidence. *State v. Fielders*, 124 N.H. 310, 313–14, 470 A.2d 897, 899–900 (1983); RESTATEMENT (SECOND) OF JUDGMENTS § 28(4) (1982).

██ Mrs. Charpentier's additional arguments concerning the 1976 consent decree and the various contempt proceedings involve theories of equitable estoppel and waiver. Although this Court has recognized the principle of governmental estoppel, *City of Concord v. Tompkins*, 124 N.H. 463, 471 A.2d 1152 (1984), the operation of this principle depends upon proof of each of the four elements of estoppel: (1) there must have been a representation or concealment of material facts made with knowledge of those facts; (2) the party to whom the representation was made must have been ignorant of the truth of the matter; (3) the representation must have been made with the intention of inducing the other party to rely upon it; and (4) the other party must have been induced to rely upon the representation to his or her injury. *Id.* at 467–68, 471 A.2d at 1154; *see Johnson v. Phenix Mut. Fire Ins. Co.*, 122 N.H. 389, 393, 445 A.2d 1097, 1099 (1982).

██ The consent decree simply says that Mrs. Charpentier will not be held in contempt if she uses her best efforts to secure com-

pliance. The decree does not pertain to liability for different causes of action, nor does it pertain to actions based upon changed factual circumstances. Thus, we hold that in the consent decree the State made no representation concerning immunity from all other liability relating to Mrs. Charpentier's ownership of the dump site. Since the government made no representation concerning liability of Mrs. Charpentier on other causes of action, there can be no governmental estoppel in this case. *City of Concord v. Tompkins supra.*

■ Mrs. Charpentier's waiver argument fails for similar reasons. There is no language in the consent decree relinquishing other causes of action arising from the existence of a hazardous waste dump on Mrs. Charpentier's property. The decree merely states that she will not be found in contempt of the consent decree in future proceedings in the injunctive action. Therefore, there was no express waiver of other causes of action by the State. Further, the State's efforts to find Mrs. Charpentier in contempt of the consent decree did not operate as an implied waiver by the State of its right to sue Mrs. Charpentier for the cost of the removal of the hazardous waste dump on her property. *See Logic Associates, Inc. v. Time Share Corp.*, 124 N.H. 565, 571, 474 A.2d 1006, 1010 (1984) (waiver may be inferred from a course of conduct). During the period of the contempt proceedings, 1976–1979, the State had not found it necessary to begin its own cleaning of the site, and therefore the present action for damages did not exist and was not foreseeable. By 1980 when this damages action was filed, the existence of large quantities of hazardous chemical wastes on the site necessitated the State's involvement in its own removal of wastes in order to protect the public health.

■ Mrs. Charpentier also claims that the trial court erred when it denied her motion for a directed verdict at the close of the State's case. In order to grant a motion for directed verdict the judge must find that "all of the evidence viewed most favorably to the opponent so overwhelmingly favors the moving party that no contrary verdict based upon the evidence could ever stand." *Amabello v. Colonial Motors*, 117 N.H. 556, 561, 374 A.2d 1182, 1185 (1977); *Duval v. Wiggin*, 124 N.H. 550, 552, 474 A.2d 1002, 1005 (1984).

The defendant argues that since there is no direct evidence that she knew of the existence of the hazardous waste activities continuing on her property, the jury could not have found that she was liable for these activities. Since liability for common law nuisance may be established if the landowner knew or *had reason to know* that a

public nuisance existed, Mrs. Charpentier's objection is not justified. *See* RESTATEMENT (SECOND) OF TORTS §§ 838, 839 (1979).

 The record supplies ample support for the jury's finding that Mrs. Charpentier should have known that hazardous waste was being deposited on her property. Evidence was presented indicating that she visited the house on the premises weekly. Further, Mrs. Charpentier's son, Walter Charpentier, leased half of the garage on the property and was therefore on the premises on a daily basis while Sylvester was carrying on dumping activities. Accordingly, we affirm the trial court's denial of Mrs. Charpentier's motion for a directed verdict.

Finally, Mrs. Charpentier contends that the trial court erred in its denial of her motion to set aside the jury's verdict. Motions to set aside a jury's verdict usually claim either that the verdict is against the weight of the evidence or that the jury made a clear mistake. *Faust v. General Motors Corp.*, 117 N.H. 679, 683, 377 A.2d 885, 887–88 (1977). Mrs. Charpentier claimed in her motion to set aside the verdict that it was against the weight of the evidence.

 A judge's decision to set aside a jury's verdict as contrary to the weight of the evidence is limited to cases in which "the evidence in favor of the [party] is of such overwhelming weight that everyone must find in her favor, and nothing but mistake, partiality, or corruption could account for the verdict and its supporting finding." *Id.*, 377 A.2d at 887 (quoting *Bennett v. Larose*, 82 N.H. 443, 448, 136 A. 254, 257 (1926)).

In this case the jury found Mrs. Charpentier liable for the continued existence of the hazardous waste dump located on her property and allocated 10% of the total verdict against her. The evidence supported the finding that she should have known of the ongoing dumping activity and that she did not take reasonable steps to prevent it or to remove the existing hazard.

Mrs. Charpentier also alleged in her post-trial motion that the State had failed to mitigate its damages by failing to act quickly in preventing the continued dumping on the site. After hearing evidence of the State's pursuit of abatement and cleaning of the dump, through the consent decree and subsequent contempt proceedings, the jury did not reduce the State's damages. Therefore, the jury rejected Mrs. Charpentier's claim that the State failed to mitigate damages. Based upon the record, we do not find the weight of the evidence to be against the jury's findings, and hold that the trial court's denial of her motion to set aside the verdict was proper.

 We recognize that in this case there may have been other parties not joined in this action who were responsible for the genera-

tion and deposit of the hazardous chemical wastes on Mrs. Charpentier's property. This court will not, however, interfere with the State's prosecutorial role and suggest that other defendants should have been joined. The existence of other culpable parties does not eliminate a landowner's responsibility to know about and control the activities conducted on his or her property.

Accordingly, we affirm the verdict against Mrs. Charpentier.

*Affirmed.*

SOUTER, J., did not sit; the others concurred.